Dilks, Appellant, *v.* Flohr Chevrolet.

426

Argued January 15, 1963. Before MUSMANNO, JONES, COHEN, EAGEN and O'BRIEN, JJ.

reargument refused July 20, 1963.

*Desmond J. McTighe,* with him *Philip D. Weiss,* and *Duffy, McTighe & McElhone,* for appellant.

*William F. Fox,* with him *Herbert A. Barton,* and *Fox, Differ, DiGiacomo & Lowe,* for appellee.

OPINION BY MR. JUSTICE BENJAMIN R. JONES, July 2, 1963:

This appeal requires the construction of several paragraphs of a written building lease to determine whether, under those paragraphs of the lease, the lessee is relieved of any liability to the lessor for damages to the building arising from a fire allegedly caused by the negligence of the lessee's employees.

On December 6, 1956, Milford Dilks (Dilks), the owner of premises located at 551 Lancaster Avenue, Haverford, Pa., leased the premises for a term of five years to Flohr Chevrolet, Inc. (Chevrolet), to be used by the latter as an automobile sales office and a shop for the service and repair of automobiles. Chevrolet entered into possession on December 10, 1956 and remained in possession until December 3, 1959. On the latter date, allegedly, certain employees of Chevrolet, engaged in using an inflammable liquid to clean an automobile engine, caused a fire which spread to some excelsior wrapped around automotive parts and eventually resulted in the complete destruction of Dilks' building.

Allegedly having suffered a $231,500 loss,[1] Dilks instituted an assumpsit action against Chevrolet in the Court of Common Pleas of Montgomery County.

---

[1] $200,000 for loss of the building and $31,500 for loss of rent.

In his complaint, Dilks averred that Chevrolet had breached two covenants contained in the lease—a covenant to use every reasonable precaution against fire[2] and a covenant not to permit benzine on the premises[3]—in the following respects: Chevrolet (a) failed to use every reasonable precaution against fire; (b) used benzine on the premises; (c) stored automotive parts wrapped in excelsior in areas in which inflammable liquids were used to clean engines; (d) failed to report without delay the outbreak of the fire. After the filing of an answer, Chevrolet moved for judgment on the pleadings. That motion was based principally upon paragraph 8,(b), of the lease which Chevrolet claimed excused and relieved it from any liability to Dilks for the fire, even though the fire was caused by the negligence of Chevrolet's employees.[4]

Judgment on the pleadings was entered by the court below in favor of Chevrolet and against Dilks and the propriety of the entry of that judgment is now before us.

On this appeal, the vital paragraph of this lease is paragraph 8,(b),[5] under which Chevrolet became

---

[2] Under paragraph 8, (d), Chevrolet covenanted that it would "Use every reasonable precaution against fire".

[3] Under paragraph 9, (g), Chevrolet covenanted that it would not, without Dilks consent, ". . . carry or have any benzine . . . in and about the demised premises."

[4] In the court below, Chevrolet raised the question of collateral estoppel on the ground that Dilks, having entered under the lease an amicable action of ejectment, was estopped to institute the instant action. While the court below, in its opinion, did not consider this question, Chevrolet does raise it before us. Collateral estoppel, like res adjudicata, is an affirmative defense which must be raised in the pleadings under "New Matter": Pa. R.C.P. 1030. Since Chevrolet did not so raise this question, it need not be considered.

[5] The court below did place some reliance on paragraph 9, (g), infra, as a *factor* in determining the intent of the parties under paragraph 8, (b).

obligated to "[k]eep the demised premises clean and free from all ashes, dirt and other refuse matter; replace all glass windows, doors, etc., broken; keep all waste and drain pipes open; repair all damage to plumbing and to the premises in general; keep the same in good order and repair as they are now, reasonable wear and tear and *damage by accidental fire or other casualty not occurring through negligence of [Chevrolet] or those employed by or acting for [Chevrolet] alone excepted.* [Chevrolet] agrees to surrender the demised premises in the same condition in which [Chevrolet] has herein agreed to keep the same during the continuance of this lease." (Emphasis supplied).

The rationale of the court below in the entry of this judgment was: (a) the parties' use of the word "or" as a disjunctive particle in paragraph 8,(b), revealed their *intent* to differentiate between two alternatives, i.e., an "accidental fire" and an "other casualty"; (b) such use of the word "or" further revealed the parties' *intent* that Chevrolet was to be exculpated of any responsibility for damages caused by an "accidental fire", whether such fire was caused by Chevrolet's negligence or otherwise, but that Chevrolet was not to be exculpated of any responsibility for damages caused by an "other casualty" if such "other casualty" was caused by Chevrolet's negligence;[6] (c) that the words "accidental fire" include fires of both negligent and non-negligent origin and per se relieved Chevrolet of any responsibility for damages for a fire caused by its negligence; (d) that this construction of paragraph 8,(b), was fortified by the language of paragraph 9,(g),[7] which the court construed to require

---

[6] In effect, the court below held that, *because of the use of the word "or"*, the phrase "not occurring through negligence of [Chevrolet] or those employed by or acting for [Chevrolet]" modified "other casualty" but not "accidental fire".

[7] Under paragraph 9, (g), Chevrolet covenanted that it would not do any act objectionable to the fire insurance company where-

Dilks to carry fire insurance; (e) that the covenants contained in paragraphs 8,(d), and 9,(g)—requiring, respectively, the use of reasonable precaution against fire and that benzine be not used on the premises— were enforceable in independent actions but not in this action.

In passing upon the propriety of the entry of this judgment we are mindful of two applicable principles of law: (1) ". . . the well-known rule of construction that, in cases of doubt or uncertainty as to the meaning of a provision of a lease, it is to be construed most strongly against the lessor and in favor of the lessee: [citing cases] :" *Darrow v. Keystone Stores, Inc.*, 365 Pa. 123, 126, 74 A. 2d 176. See also: *Bogutz v. Margolin*, 392 Pa. 151, 154, 139 A. 2d 649; *Larsh v. Frank & Seder of Pittsburgh, Inc.*, 347 Pa. 387, 391, 32 A. 2d 219; (2) a judgment on the pleadings should be entered only in cases which are clear and free from doubt: *Rogoff v. The Buncher Company*, 395 Pa. 477, 480, 151 A. 2d 83; *Necho Coal Co. v. Denise Coal Co.*, 387 Pa. 567, 568, 128 A. 2d 771.

We are in agreement with the conclusion reached by the court below that the word "or" in paragraph 8,(b), is used as a disjunctive particle to differentiate between an "accidental fire" and an "other casualty".[8]

---

by fire insurance then in force or thereafter placed would become void or suspended. This paragraph then provided: "In case of a breach of this covenant (in addition to all other remedies given to [Dilks] in case of the breach of any of the conditions or covenants of this lease) [Chevrolet] agrees to pay to [Dilks] as additional rent any and all increase or increases of premiums on *insurance carried by [Dilks] on the demised premises*, or any part thereof, or on the building of which the demised premises may be a part, caused in any way by the occupancy of [Chevrolet]." (The court below supplied the emphasis.)

[8] *Marnell v. Mt. Carmel Jt. School System*, 380 Pa. 83, 88, 110 A. 2d 357.

In fact, Dilks, in his brief, subscribed to this conclusion.

However, we do not agree with the court below that the employment of "or" in paragraph 8,(b), necessarily reveals the intent of the parties that the phrase "not occurring through negligence of [Chevrolet] or those employed by or acting for [Chevrolet]" modify *only* an "other casualty" and *not* an "accidental fire". Words and phrases on one side of the word "or" *may,* and often do, modify and apply to words and phrases on the other side of the word "or" in the same sentence. For example, in the very paragraph now under construction, the words "damage by" are on one side of "or" and yet clearly such words include not only "damage by" *accidental fire* on the same side of "or" but also "damage by" *other casualty* on the other side of "or". In construing "or", the court below relied in part on *Garratt v. Philadelphia,* 387 Pa. 442, 444, 127 A. 2d 738. In *Garratt,* the Court construed the language of a municipal ordinance which read: "Section 1. The Council hereby provides that the sum of Ten Thousand ($10,000) Dollars shall be paid to the surviving widow or dependent children or dependent parents of every fireman, policeman *or* park policeman who is killed in the course of responding to an alarm, fighting a fire, apprehending a criminal or in the course of performing an heroic deed which involves a special hazard or risk." (emphasis supplied). Can there be the slightest doubt under the language of this ordinance that, even though "or" separates "policeman" and "park policeman", that the phrase "who is killed in the course of responding to an alarm, etc." modifies not only "policeman" on the one side of "or", but also "park policeman" on the other side of "or"?

In the case at bar, the use of the word "or" does not *clearly* or *necessarily* preclude the conclusion that the parties intended the phrase "not occurring through

negligence of [Chevrolet] or those employed by or acting for [Chevrolet]" to modify both "other causalty" and "accidental fire", particularly if "accidental fire" be construed to include fires negligently caused as well as non-negligently caused. *If* "accidental fire" is so modified, then, obviously, paragraph 8,(b), does not relieve Chevrolet of liability for a fire caused by its negligence or its employee's negligence.

. Even if "accidental fire" is not so modified, as the court below, by implication at least, found, does the exemption from liability granted to Chevrolet for "damage by accidental fire" *standing alone* relieve Chevrolet from liability for a fire caused by its own negligence? The court below found that the words "accidental fire" encompassed fires of negligent as well as non-negligent origin and for such finding there exists authority under our law. Our Court in *North American Life & Accident Insurance Co. v. Burroughs,* 69 Pa. 43, 51, 52, defined the terms "accident" and "accidental": "An accident is 'an event that takes place without one's foresight or expectation; an event which proceeds from an unknown cause, or is an unusual effect of a known cause, and therefore not expected; chance; casualty; contingency.' And accidental signifies, 'Happening by chance or unexpectedly; taking place not according to the usual cause of things; casual; fortuitous. We speak of a thing as accidental when it falls to us as by chance and not in the regular course of things; . . .' Webster's Dictionary *ad verba."* Over 100 years ago and prior to *Burroughs,* supra, this Court in *McCarty v. New York and Erie Railroad Company,* 30 Pa. 247, 250, 251, considered whether "accidental fire" included fires of negligent as well as of non-negligent origin. In that case, the Court considered the propriety of instructions to a jury wherein the trial court said: " 'If the fire' . . . 'was the result of accident, a circumstance over which they could have no control, they are not liable. If it was

the result of carelessness or negligence on their part, they are liable.' " Counsel argued that the trial court's use of the word "accident" led the jury to believe that a loss occasioned by an accident is something different from a loss occasioned by negligence, that the two are identical and the opposite of accident is not negligence but design. The Court said: "If accident and negligence be not opposites, we cannot regard them as identical, without confounding cause and effect. *Accident,* and its synonyms casualty and misfortune, *may proceed or result from negligence, or other cause known, or unknown."* (emphasis supplied) See also: *Springfield Township v. Indemnity Insurance Company,* 361 Pa. 461, 463, 64 A. 2d 761; *Hardware Mutual Insurance Company of Minnesota v. C. A. Snyder, Inc.,* 242 F. 2d 64. The court below was correct in holding that an "accidental fire" included fires of negligent as well as non-negligent origin. However, reasoning from such premise, the court below then proceeded to find that the phrase "damage by accidental fire" *standing alone* was sufficient to exhibit Dilks' intent to release Chevrolet from liability for damages caused by a fire even though such fire was caused by Chevrolet or its employees. With that position we disagree.

Assuming, arguendo, that the court below was correct in concluding that "accidental fire" was not modified by any other phrase in the lease and that "accidental fire" included fires of both negligent and non-negligent origin, paragraph 8,(b), still does not relieve Chevrolet of responsibility for a fire caused by its own negligence. The *validity* of a contractual provision which exculpates a person from liability for his own acts of negligence is well settled if the contract is between persons relating entirely to their own private affairs. An exculpatory clause in a lease which relieves a contractee (or contractor) from liability for injury or damage caused by fire, even though such fire results from the contractee's (contractor's) own acts

of negligence is valid and enforceable "if it does not contravene any policy of the law, that is, if it is not a matter of interest to the public or the State[9] but merely an agreement between persons relating entirely to their private affairs: [citing cases]": *Boyd v. Smith*, 372 Pa. 306, 309, 94 A. 2d 44; *Manius v. Housing Authority of the City of Pittsburgh*, 350 Pa. 512, 39 A. 2d 614; *Strothman v. Houggy*, 186 Pa. Superior Ct. 638, 641, 142 A. 2d 769; *Wright v. Sterling Land Co. Inc.*, 157 Pa. Superior Ct. 625, 628, 43 A. 2d 614; *Lerner v. Heicklen*, 89 Pa. Superior Ct. 234, 236, 237.

Despite the general *validity* of exculpatory provisions, certain standards have been established which must be met before an exculpatory provision will be interpreted and construed to relieve a person of liability *for his own or his servants' acts of negligence.* In *Crew v. Bradstreet*, 134 Pa. 161, 169, 19 A. 500, this Court said: "Contracts against liability for negligence are not favored by the law. In some instances, such as common carriers, they are prohibited as against public policy. In all cases, such contracts should be construed strictly, with every intendment against the party seeking their protection."[10] (p. 169). In *Morton v. Ambridge Borough*, 375 Pa. 630, 635, 101 A. 2d 661, the late Mr. Justice CHIDSEY, speaking for this Court,

---

[9] Examples of *invalid* exculpatory clauses are to be found, inter alia, in cases involving *bailees* (*Downs v. Sley System Garages*, 129 Pa. Superior Ct. 68, 69, 194 A. 772; *Wendt v. Sley System Garages*, 124 Pa. Superior Ct. 224, 227, 188 A. 624; *Baione v. Heavey*, 103 Pa. Superior Ct. 529, 158 A. 181), *banks* (*Thomas v. First Nat'l Bank of Scranton*, 376 Pa. 181, 185, 186, 101 A. 2d 910) and *common carriers* (*Turek v. Penna. R.R.*, 361 Pa. 512, 515, 64 A. 2d 779; *Rogers v. Phila. & Reading Rwy. Co.*, 260 Pa. 430, 435, 103 A. 873; *Murray v. Phila. & Reading Rwy. Co.*, 249 Pa. 126, 94 A. 558; *Beckman v. Shouse*, 5 Rawle (Pa.) 179).

[10] In this area of the law, the usual rule of construction against the lessor and in favor of the lessee, supra, must yield.

said: "An agreement or instrument by which it is intended to diminish legal rights which normally accrue as a result of a given legal relationship or transaction *must spell out the intention of the parties with the greatest of particularity,* since such contracts or instruments are construed strictly against the party seeking their protection: [citing cases]." (emphasis supplied). In *Perry v. Payne,* 217 Pa. 252, 262, 66 A. 553, (an indemnity contract).[11] the Court said: "We think it clear, on reason and authority, that a contract of indemnity against personal injuries should not be construed to indemnify against the negligence of the indemnitee, *unless it is so expressed in unequivocal terms.* The liability on such indemnity is so hazardous, and the charcater of the indemnity so unusal and extraordinary, that there can be no presumption that the indemnitor intended to assume the responsibility *unless the contract puts it beyond doubt by express stipulation. No inference from words of general import can establish it."* (emphasis supplied). See also: *Camden Safe Deposit & Trust Co. v. Eavenson,* 295 Pa. 357, 145 A. 434; *Schroeder v. Gulf Refining Co. (No. 2),* 300 Pa. 405, 150 A. 665; *Cannon v. Bresch,* 307 Pa. 31, 36, 160 A. 595; *Siegel Co. v. Philadelphia Record Co.,* 348 Pa. 245, 35 A. 2d 408; *Darrow v. Keystone Stores, Inc.,* 365 Pa. 123, 74 A. 2d 176; *Pittsburgh Steel Co. v. Patteron-Emerson-Comstock,* 404 Pa. 53, 171 A. 2d 185. The common sense of this rule was set forth in *Carstens v. Western Pipe & Steel Co.,* 142 Wash. 259, 252 P. 939: "It would be natural and customary

---

[11] While an exculpatory clause—which deprives one contracting party of a right to recover for damages suffered through the negligence of the other contracting party—differs somewhat from an indemnity clause—which effects a change in the person who ultimately has to pay the damages—yet there is such a substantial kinship between both types of contracts as to render decisions dealing with indemnity clauses applicable to decisions dealing with exculpatory clauses, and vice versa.

for the lessee to want to escape liability for purely ac-. cidental fires, and for the lessors to be willing to grant that relief, but it would not be natural that the lessors would be willing to release the lessee from damages caused by its own active negligence. Such a concession would hardly be looked for in a contract between business men. *If the parties intend such a contract, we would expect them to so state in clear terms.*" (emphasis supplied).

The principle which underlies all these cases is that, where a person claims that, under the provisions and terms of a contract, he is rendered immune from and relieved of any liability for negligent conduct on his part or on the part of his employees, the burden is upon such person to prove (a) that such contractual provisions and terms do not contravene public policy and (b) that the provisions and terms of the contract *clearly* and *unequivocally* spell out the *intent* to grant such immunity and relief from liability. Absent such proof, the claim of immunity falls.

In the case at bar, the lease lacks any expression of a *clear* and *unequivocal* intent that Dilks released Chevrolet from liability for damages caused by a fire started by the negligence of Chevrolet or its employees. The language of this lease, more particularly paragraph 8,(b), gives rise to no inference or presumption sufficient to satisfy the standard of clarity of intent essential to uphold Chevrolet's claim of immunity.

The court below, believing that the language of paragraph 9,(g), required Dilks to carry fire insurance, considered such obligation as a factor in determining the intent of the parties. We do not so construe paragraph (9), (g); even if we did, the existence of fire insurance or the requirement that Chevrolet might have to pay any increase in insurance premiums does not alter the result. That Chevrolet, under paragraph 9,(g), might have been called upon to pay any increase

in fire insurance premiums would not prove that the parties to this lease *contemplated* that the building would be subjected to increased hazards *by reason of negligent operation* of Chevrolet's business but rather that the building might be subjected to increased hazards because of the nature of Chevrolet's business. In *Maiatico v. Hot Shoppes, Inc.*, 287 F. 2d 349, it was said: ". . . Nothing requires either the landlord or tenant to insure unless he contracts to do so. He can, if he is foolish or rich, self-insure. Who carries the insurance, or whether it is carried at all, cannot determine the liability of the tenant for his own acts of negligence."

Lastly, the court below held that Dilks for a breach of either of the two covenants, claimed in his complaint to have been breached, would have an action in which he could demand, in the form of rent, any increase in insurance premiums or an action of ejectment. In our view, the possibility of such other actions in nowise precludes Dilks from maintaining the present action.

The motion for judgment on the pleadings should not have been granted. The terms and provisions of this lease, particularly paragraph 8,(b), do not *clearly* and *unequivocally* show an intent on Dilks' part to relieve Chevrolet of liability for damages for a fire caused either by Chevrolet or by its servants.

Judgment reversed.

Mr. Justice COHEN dissents.