## Dohm v. Ponderosa Riding Stables, Inc.

*W. William Anderson,* for plaintiff.

*Daniel W. Shoemaker,* for defendant.

SHADLE, J., September 15, 1966.—Defendant, which is engaged in the business of renting riding horses to the public, rented such a horse to plaintiff. Plaintiff alleged that while he was riding the horse, the saddle slipped, causing him to fall to the ground and suffer personal injuries for which he seeks recovery. He claims that defendant was negligent in not properly securing the saddle.

At the time the horse was rented, plaintiff signed a typewritten form furnished by defendant, on which was written the date, the name of the horse, the time of the rental and the amount of the rental charge. This form also contained the following statement: "The undersigned do hereby acknowledge that they will be responsible for, and do hereby relieve . . . (defendant) from any and all liability by reason of damages assessed for any injury to any person or property, either of the undersigned or others during the rental and use of the above animals. . . ."

Defendant pleaded the exculpatory provisions of this instrument in its answer to plaintiff's complaint. In reply, plaintiff alleged that the release was void as against public policy. Since plaintiff's claim is barred if the instrument is effective as a release, both parties have agreed to submit the issue to the court as though defendant had formally filed a motion for judgment on the pleadings in accordance with Pennsylvania Rule of Civil Procedure 1034.

The validity of such exculpatory contracts is a matter of legal dispute among various jurisdictions under varying circumstances. Section 574 of the Restatement of Contracts provides that: "A bargain for exemption from liability for the consequences of negligence not falling greatly below the standard established by law for the protection of others against unreasonable risk of harm, is legal except in the cases stated in §575". The comments to this section indicate that only recklessness or gross negligence are intended by its language to be excluded from its provisions.

Section 575 of the Restatement of Contracts renders illegal only such contracts as protect from wilful misconduct, and those in which ". . . (a) the parties are employer and employee . . . or (b) one of the parties is charged with a duty of public service. . . ." Since the contract in question falls under none of these categor-

ies, it would constitute a valid release under the Restatement.

The attitude of the Pennsylvania courts toward such instruments has been articulated in two recent cases. Dilks v. Flohr Chevrolet, 411 Pa. 425 (1963), contains the following language: "The validity of a contractual provision which exculpates a person from liability for his own acts of negligence is well settled if the contract is between persons relating entirely to their own private affairs.

" . . .

" 'In all cases, such contracts should be construed strictly, with every intendment against the party seeking their protection' ". The court further added: ". . . where a person claims that, under the provisions and terms of a contract, he is rendered immune from and relieved of any liability for negligent conduct on his part or on the part of his employees, the burden is upon such person to prove (a) that such contractual provisions and terms do not contravene public policy [as in the case of bailees, banks and common carriers] and (b) that the provisions and terms of the contract clearly and unequivocally spell out the intent to grant such immunity and relief from liability. Absent such proof, the claim of immunity falls".

In Galligan v. Arovitch, 421 Pa. 301 (1966), it was held that, while it is the rule that a covenant against liability for acts of negligence is valid and enforceable when entered into by private individuals in furtherance of their personal affairs, such rule necessarily assumes that each party is a free bargaining agent. The court there said: "An agreement or instrument which reduces legal rights which would otherwise exist is strictly construed against the party asserting it and must spell out with the utmost particularity the intention of the parties".

Plaintiff contends that the instant release is invalid

for three reasons: (1) It is against public policy because defendant is, in effect, a "public enterprise"; (2) the release does not in so many words relieve the liability for negligence; and (3) it cannot operate retroactively to relieve defendant of its prior negligence.

On the first issue of public policy, an extensive annotation in 175 A. L. R. 8 is enlightening. It is there pointed out that public policy is considered adversely affected only where one of the parties is "charged with a duty of public service", as in the case of public utilities and common carriers, or where the public is compelled to deal with him on his own terms, as in the case of bailees for hire who store or safekeep goods for others, such as warehousemen and parking lot operators, or where such person deals contemporaneously with several others by negating liability through the use of printed forms, tickets or signs, or where the parties have no equal bargaining power. It is further noted that equality of bargaining power is determined by the importance of the contract to the physical or economic well-being of the party executing the release, and the extent to which competition exists in rendering the item contracted for: "Where there is no, or no great, disparity of bargaining power between the parties, contracts limiting liability for negligence will, as a rule, be upheld on the theory of freedom of contract": 175 A. L. R. 8, §11.

Measured by these standards, the contract in question clearly does not offend public policy. One in the business of furnishing riding horses for hire is in no way charged with a duty of public service or even quasi-public service, as in the case of a common carrier or warehouseman. There was no wholesale contemporaneous use here of tickets or signs to negate liability to all customers. Neither was there any inequality of bargaining power when one considers plaintiff's needs and defendant's competitive position. The desire for recrea-

tion by riding a horse certainly cannot be equated with the need of a prospective tenant to rent a dwelling under a lease containing a release. Neither is there any shortage of other places to rent riding horses, had plaintiff chosen not to sign defendant's release. In the words of Dilks and Galligan, supra, this clearly was merely a contract between private individuals relating entirely to their personal affairs.

It is true, the release does not in so many words relieve defendant from liability for "negligence". However, as pointed out in the annotation in 175 A. L. R. 8, supra, "By construing every exemption clause which does not expressly refer to negligence, as not intended to include negligence, the courts have succeeded in emasculating liability exemption conditions generally . . .", and ". . . a great number of exculpatory clauses are rendered meaningless unless construed to include freedom from liability for negligent conduct". If a release "from any and all liability by reason of damages assessed for any injury to any person or property" does not mean liability by reason of negligence, then it means nothing at all. No measure of strict construction nor requirement of clarity and specificity of language can narrow this clause to exclude liability by reason of negligence.

On the issue of retroactivity of the release, plaintiff argues that "it is a fair inference" that the release was signed *after* the saddle was negligently affixed. He then cites the lower court case of Saewitz v. Levittown Shopping Center, Inc., 34 D. & C. 2d 499 (Bucks Co., 1964), which held that a clause in a lease relieving the landlord from liability for defective water pipes could not operate retroactively to relieve from damage from water pipes already defective when the lease was signed.

In the first place, it is just as fair an inference in this case that the release was signed before the horse

312

was saddled as afterwards. Furthermore, there are different and more important considerations involved in weighing the validity of a "contract of adhesion" in a lease of real estate than those incident to the hiring of a riding horse. See Galligan v. Arovitch, supra. Finally, we do not agree that the mere fact that the alleged negligent act may have antedated the release is sufficient to invalidate it in this case. Otherwise, no release could be relied on to protect from liability for a pre-existing tort.

We are satisfied, therefore, that the parties here freely and knowingly contracted to relieve defendant from liability for damages of the type which plaintiff suffered, that such contract in no way offends public policy under the facts here involved, and that, as a consequence, plaintiff relinquished his right to recover from defendant in this case.

ORDER

And now, to wit, September 15, 1966, judgment on the pleadings is entered in favor of defendant and against plaintiff. An exception is noted for plaintiff.