SAFECO INSURANCE COMPANY
OF AMERICA

v.

GREAT AMERICAN INSURANCE
COMPANY

v.

ARDMORE DISTRIBUTORS, INC.

Civ. A. No. 80–2851.

United States District Court,
E. D. Pennsylvania.

Sept. 15, 1981.

Louis E. Bricklin, Philadelphia, Pa., for plaintiff.

James Lewis Griffith, Philadelphia, Pa., for Great American.

Spencer Ervin, Jr., Philadelphia, Pa., for Ardmore.

## MEMORANDUM

HUYETT, District Judge.

This complaint seeks a declaratory judgment pursuant to 28 U.S.C. § 2201. Jurisdiction is predicated upon diversity of citizenship. The plaintiff is a Washington corporation with its principal place of business in Seattle, Washington and the defendant is a New York corporation with its principal place of business in Cincinnati, Ohio. The third-party defendant is a Pennsylvania corporation with its principal place of business in Pennsylvania. The amount in controversy exceeds $10,000. The parties have executed a comprehensive stipulation of uncontested facts. Agreeing that there are no genuine issues of material fact, they have submitted the case on cross-motions for summary judgment.

As set forth in the stipulation of facts, the suit arises from an incident on January 2, 1976. On that date, John Jefferson entered a Baskin-Robbins store located in Ardmore, Pennsylvania for the purpose of purchasing some ice cream. The Baskin-Robbins store was franchised to the third-party defendant, Ardmore Distributors, Inc. (Ardmore Distributors), by Baskin-Robbins Eastern Corporation (the predecessor interest of Baskin-Robbins, Inc.) with the approval of Baskin-Robbins, Inc.

While in the store, Jefferson sampled a new flavor of ice cream and immediately complained of a burning sensation in his throat. The burning sensation was caused by ammonia nitrate which had tainted the ice cream at the time of its manufacture in a plant operated by Baskin-Robbins, Inc. As a result of the personal injuries sustained by Jefferson, he instituted suit against Baskin-Robbins, Inc., Baskin-Robbins Ice Cream Company (jointly referred to as Baskin-Robbins) and Ardmore Distributors in the Montgomery County Court of Common Pleas.

That suit was eventually settled for the sum of $40,000 which was paid to Jefferson in equal parts by Safeco Insurance Company (Safeco) as insurer for Ardmore Distributors and Great American Insurance Company (Great American) as insurer for Baskin-Robbins. The specific terms of the settlement agreement were as set forth in a letter signed on May 2, 1980, by counsel for Great American, Safeco and Ardmore Distributors. The parties agreed that their joint settlement with Jefferson would not prejudice any rights one of them may have against the others.

At the time of the incident in question, the Baskin-Robbins store was being operated by Ardmore Distributors pursuant to a franchise agreement (agreement). Additionally, at the same time Ardmore Distributors was a party to a sublease (lease) between it and Baskin-Robbins Eastern Corporation. At all pertinent times the president and chief operating officer of Ardmore Distributors was Bruce Bradway. After Bradway executed the franchise agreement and lease on behalf of Ardmore Distributors, he took copies of them to a Safeco agent and requested that the agent provide him with coverage sufficient to fulfill the requirements of the franchise and lease agreements. As a result, Safeco issued to Ardmore Distributors its policy number CP553117 which contained a "change endorsement" in effect at the time of the Jefferson incident which added Baskin-Robbins as an "additional named insured" to the policy.

It is important to note that Safeco concedes that Ardmore Distributors requested it to name Baskin-Robbins on the Safeco policy and that Safeco did, in fact, do so. Safeco also concedes that if there were no other insurance available to Baskin-Robbins, the Safeco policy would have covered Baskin-Robbins for a claim such as Jefferson's.

Following resolution of the Jefferson lawsuit, Safeco instituted this action contending that since Ardmore Distributors is entitled to indemnity from Baskin-Robbins, so Safeco, insurer for Ardmore Distributors, is entitled to indemnity from Great American, insurer for Baskin-Robbins. Recogniz-

ing that Baskin-Robbins is named as an additional insured on the policy that Safeco issued to Ardmore Distributors, Safeco nevertheless asserts a right to recover its contribution, contending that when the "other insurance" clauses of the Safeco and Great American policies are compared, Great American is required to bear the entire loss attributable to its insured, Baskin-Robbins. Great American contends that the franchise agreement placed the entire risk of loss on Safeco's insured, Ardmore Distributor because Ardmore Distributor agreed to indemnify Baskin-Robbins for this type of liability and agreed to provide Baskin-Robbins with insurance for this type of liability. Great American also disputes Safeco's conclusion about the effect of the two other insurance clauses. Further, Great American argues that if Safeco is right that the Safeco policy does not cover Baskin-Robbins because of the other insurance clauses, then Ardmore Distributors is liable to Baskin-Robbins (and by way of subrogation to Great American) for breach of the franchise agreement.

Before a determination can be made of the rights of Safeco and Great American, a determination must first be made of the rights of their insureds, Ardmore Distributors and Baskin-Robbins. Since Safeco and Great American are both insurers, their rights and responsibilities can be no different than those of their insureds except insofar as the rights are altered by the policies themselves. Thus it is necessary first to determine how Pennsylvania courts would allocate the responsibility for this incident between Baskin-Robbins and Ardmore Distributors and secondly how the terms of the policies effect which insurance company is responsible for payment of the loss.

■ Paragraph 5 of the stipulation of facts identifies the source of the ammonia nitrate contamination at the Baskin-Robbins plant where the ice cream was manufactured. The common law of Pennsylvania recognizes a right of indemnity in one who, without active fault, has been compelled by law to pay damages to an injured party. The faultless party may recover the full amount paid it to the injured party from the party actively at fault for the injury. *See Burbage v. Boiler Engineering and Supply Co.*, 433 Pa. 319, 249 A.2d 563, 567 (1969). Therefore, because Ardmore Distributor's liability is based solely upon its failure to discover a defect created by Baskin-Robbins, Ardmore Distributors would be entitled to common law indemnity from Baskin-Robbins. *See id. See also Tromza v. Tecumseh Products Co.*, 378 F.2d 601 (3d Cir. 1967).

Although the common law of indemnity would entitle Ardmore to recover from Baskin-Robbins, Great American, Baskin-Robbins' insurer, contends that the usual result is reversed in this case. Great American contends that certain provisions of the franchise agreement require that Ardmore indemnify Baskin-Robbins. The provision of the franchise agreement at the center of this controversy provides in part: "Retailer (Ardmore Distributors) agrees to hold harmless and protect area franchiser (Baskin-Robbins Eastern Corp.) and Baskin-Robbins (Baskin-Robbins, Inc.) from and against any liability of any kind or nature *resulting from the operation of retailer's business.*" (Emphasis supplied) This provision which Great American interprets as a broad promise to indemnify was drafted by Baskin-Robbins.

A fundamental rule of contract interpretation is that where the language of a written contract is ambiguous, it will be construed against the party who chose the language. Rest. of Contracts § 235(d). In addition, special rules of interpretation apply to alleged promises to indemnify. In Pennsylvania, an indemnity contract will not be construed as protecting the indemnitee from loss resulting from its own negligence unless the intent to provide such protection is expressed in unequivocal terms. In *Pittsburgh Steel Co. v. Paterson-Emerson-Comstock, Inc.*, 404 Pa. 53, 57, 171 A.2d 185, 187 (1961), the Pennsylvania Supreme Court stated: "the law is well settled that the intention to include within the scope of an indemnification contract, a loss due to the indemnitee's own negligence, must be

expressed in clear and unequivocal language." Two years later, the Pennsylvania Supreme Court reiterated the law of the Commonwealth on this subject in *Dilks v. Flohr Chevrolet*, 411 Pa. 425, 192 A.2d 682 (1963):

> The principle which underlies all these cases is that, where a person claims that, under the provisions and terms of a contract, he is rendered immune from and relieved of any liability for negligent conduct on his part or on the part of his employees, the burden is upon such person to prove (a) that such contractual provisions and terms do not contravene public policy and (b) that the provisions and terms of the contract *clearly* and *unequivocally* spell out the *intent* to grant such immunity and relief from liability. Absent such proof, the claim of immunity falls.

*Id.* at 436, 192 A.2d 682 (emphasis in original).

 Applying these rules to this case, I conclude that the provision quoted above provides for indemnification only where the liability "result(s) from the operation of retailer's business" and fails to provide for indemnification in instances where the harm is created by Baskin-Robbins' own conduct. The Pennsylvania requirement of clear and unequivocal language prohibits an interpretation of the phrase "operation of retailer's business" which would encompass harm inflicted during the operation of the business by Baskin-Robbins' culpable conduct, rather than by Ardmore Distributor's conduct.

Great American concedes the applicability of the clear and unequivocal language standard in *Pittsburgh Steel* but contends that Ardmore's alleged obligation to indemnify Baskin-Robbins for this type of loss does appear in clear and unequivocal language in the franchise agreement when the language "resulting from the operation of retailer's business" is read in conjunction with the sentence that follows it. The next sentence upon which Great American relies provides "Retailer shall procure and maintain during the terms of this agreement liability insurance covering his business operations and product liability, written by reputable insurance Company or companies, and naming Baskin-Robbins and the Area Franchiser among the named insured parties . . . ."

In the *Pittsburgh Steel* case, the Pennsylvania Supreme Court was called upon to interpret the following clause: "Contractor . . . will indemnify, save harmless and defend a buyer . . . from all liability for loss, damage or injury to person or property in any manner arising out of or incident to performance of this order and will furnish buyer with proper evidence that contractor is insured against such liability." The court found no obligation to indemnify against the indemnitee's negligence. Thus, the obligation to procure insurance was not sufficient to clarify otherwise general language. Accordingly, I conclude that in the present case the obligation to procure product liability insurance can not remedy the fatal ambiguity in the preceding sentence. In addition to the *Pittsburgh Steel* precedent, logic supports an interpretation that treats as severable the sentence dealing with indemnity and the one dealing with the procurement of insurance. As the plaintiff points out in its brief:

> Although Safeco does not dispute that a contractual document may properly allocate the burden of purchasing insurance without violating public policy, such provisions are separate and distinct from the provisions pertaining to which liabilities vis-a-vis third parties the parties to the contract agree to accept. Once the parties have agreed as to which will accept the responsibility for suits brought by third parties vis-a-vis the third parties (the indemnity provision) they can then further contract with respect to who is to bear the burden of purchasing the insurance to protect against that responsibility (the insurance provision.)

Great American also argues that standard of *Dilks* is not strictly applied in all cases, citing *Tidewater Field Warehouses, Inc. v. Fred Whitaker, Co.*, 370 Pa. 538, 88 A.2d 796 (1952); *Urban Redevelopment Au-*

*thority v. Noralco Corp.*, 422 A.2d 563 (Pa. Super.1980). Great American's reliance on the *Tidewater* and *Urban Redevelopment Authority* cases is misplaced. In both cases, the courts permitted indemnity despite the lack of language in the contract making reference to the indemnitee's own fault or negligence because the surrounding circumstances together with the general language of the contract between the parties convinced the court that this was the intention of the parties. In *Tidewater*, the court noted that the employees responsible for the negligent actions were selected by the party from whom indemnity was sought as was the individual supervising the negligent employees. In *Urban Redevelopment Authority*, the court found that the party seeking indemnification was only passively negligent. In both situations, the party required to indemnify had some actual control over the situation giving rise to the liability and thus the courts concluded that the intention to require indemnity was supported by this control. In the present case, by contrast, the party seeking indemnity had complete control over the circumstances causing the injury. The party from whom indemnity is sought did not. Nothing in either *Urban Redevelopment Authority* or *Tidewater* suggests that indemnity should be permitted in this situation without explicit language in the contract to that effect. It is important to note that the parties have stipulated to all the facts they believe are relevant and agree that there are no outstanding factual issues that might color the interpretation of the language of the contract. Therefore, I conclude that since the contract does not contain clear and explicit language requiring Ardmore to indemnify Baskin-Robbins in the Jefferson incident, and since Ardmore did not control the circumstances causing the injury, as a matter of law, it was not the parties' intention that Ardmore would indemnify Baskin-Robbins in these circumstances.

■ Having concluded that Baskin-Robbins must ultimately bear the financial burden of settlement with Jefferson, I turn to the second question presented: which insur-ance covering Baskin-Robbins should be applied to the loss. It is undisputed that Ardmore Distributors had a contractual obligation to name the Baskin-Robbins entities as additional insureds on the Safeco policy. It is further undisputed that Ardmore Distributors made that request of Safeco and that Safeco complied with it. Had there been no other insurance available to Baskin-Robbins, Safeco does not dispute that its coverage would have protected Baskin-Robbins for the entire amount of the Jefferson settlement and that this lawsuit never would have been filed.

This lawsuit arose, not from any act or omission on the part of Ardmore Distributors or Safeco, but instead, from Baskin-Robbins' action of purchasing its own policy of liability insurance. Assuming that Baskin-Robbins actually intended its franchisees to bear the financial responsibility for any errors on Baskin-Robbins' part in its own manufacturing process as Great American contends, Baskin-Robbins could easily have arranged to obtain a policy of liability insurance that would be either excess to any policy purchased by one of its franchisees for Baskin-Robbins or, in the alternative, null and void when a franchisee had purchased a policy protecting Baskin-Robbins. That is not what Baskin-Robbins did. Rather, the policy of insurance purchased by Baskin-Robbins from Great American contains an "other insurance" clause which specifically states that the Great American policy is a policy of "primary insurance" and that when the insured has other insurance applicable to the incident on an excess or contingent basis "the amount of the company's liability under this policy shall not be reduced by the existence of such other insurance."

The language of the Safeco policy could hardly be more different. Rather than providing that it is primary insurance whose limits of liability are not to be reduced, the Safeco policy specifically provides that where there is other valid and collectible insurance applicable to the incident " . . . whether on a primary, excess or contingent basis . . . there shall be no insurance af-

forded hereunder as respects such loss ...." Based upon the Great American clause stating that the Great American policy is one of primary insurance and the Safeco clause that says that the Safeco policy is secondary whenever there is a primary policy in force, I conclude that Great American, not Safeco, must provide Baskin-Robbins with coverage for the Jefferson claim.[1] *See Tuthill v. State Farm Insurance Co.*, 19 Ill.App.3d 491, 311 N.E.2d 770 (1980).

Great American argues that if it is determined that coverage is solely the responsibility of Great American, Ardmore Distributors must be deemed to have breached its franchise agreement with Baskin-Robbins. Both the franchise and lease agreements provide only that Ardmore Distributors was to procure and maintain liability insurance "covering [its] business operations and products liability, written by a reputable insurance company . . . and naming Baskin-Robbins . . . among the named insured parties." At no point do the agreements provide that such insurance must contain a specific type of "other insurance" clause which would have the effect of making the insurance primary. The agreement was drafted by Baskin-Robbins. The parties agree that there are no outstanding factual issues which are necessary to a determination of the meaning of the agreement. Therefore, applying standard contract law principles, I shall resolve any ambiguity in the agreement against Baskin-Robbins. Doing so, I conclude that the clause imposed upon Ardmore Distributors the obligation to insure Baskin-Robbins against a product liability claim. Ardmore did provide this coverage to Baskin-Robbins through the Safeco policy. However, the agreement did not require Ardmore to anticipate the language of the Great American policy. Ardmore was not required to secure a "super primary" policy to supersede a policy like the Great American policy.

For all of the foregoing reasons, Ardmore Distributors, Inc. was entitled to full indemnity from Baskin-Robbins, Inc. for the harm caused to John Jefferson. The language of the "other insurance" clauses contained in the two policies providing insurance to Baskin-Robbins, Inc. requires the conclusion that defendant, Great American Insurance Company, is responsible for payment of Baskin-Robbins' entire liability.

Based upon the conclusions I have reached, Safeco is entitled to recoup from Great American the $20,000 it contributed to the settlement with Jefferson. Safeco also seeks its attorney's fees incurred in defending the Jefferson litigation. Declaratory judgment on this issue will be denied. It is agreed that Safeco did insure Ardmore Distributors and that Ardmore Distributors would have been liable to Jefferson, even though its liability was of a different type than Baskin-Robbins' liability. Thus, Safeco as Ardmore Distributors' insurer had an

1. Although not raised by the parties, I am familiar with the recent Third Circuit case of *Pennsylvania Manufacturers' Association Insurance Co. (PMA) v. Lumbermens Mutual Casualty Co.*, 648 F.2d 914, (3d Cir. 1980). The *PMA* case dealt with the interpretation of two insurance policies that arguably provided overlapping coverage. The *PMA* case is distinguishable from the present case despite the fact that they both involved general promises to hold another party (indemnitee) harmless and that in both cases the indemnitor agreed to purchase insurance that would benefit the indemnitee. The *PMA* case did not involve a claim for damages but only for reimbursement for cost of defending a previous action. Thus, Pennsylvania's strict rules governing indemnification for damages caused by the culpable conduct of the indemnitee did not apply. In addition, only the policy secured by the party with both the obligation to "hold harmless" and to purchase insurance contained an other insurance clause. The court concluded that the obligation to "hold harmless" included a promise to absorb the cost of defense. The court then interpreted the other insurance clause in the policy obtained by the indemnitor with reference to this obligation to defend concluding that the other insurance clause did not vitiate the obligation to defend. In the present case, the other insurance clauses should not be interpreted with reference to the "hold harmless" agreement because, as I have already determined, the promise by Ardmore Distributors to hold Baskin-Robbins harmless does not apply to the type of claim presented by Jefferson. Thus, it is not inconsistent with that promise by Ardmore Distributors to place the cost of the Jefferson claim with Baskin-Robbins' own insurer.

obligation to defend it. There is no basis in the record for me to conclude that Safeco somehow incurred greater fees because Great American insisted that Safeco should have defended Baskin-Robbins as well.