Opinion by
 

 Cunningham, J.,
 

 Invoking the provisions of “The Support Law” of June 24, 1937, P. L. 2045, 62 PS §1971 et seq., Kathryn W. Montgomery, appellee herein, presented her petition to the Court of Quarter Sessions of Armstrong County on January 14, 1941.
 

 Material averments therein were that she “is a resident of the Borough of Kittanning, Armstrong County, Pennsylvania”; that she is fifty-four years of age and is the widowed daughter of John Wick, Jr., the appellant, who “resides at No. 5701 Forbes Street, in the City of Pittsburgh, Allegheny County, Pennsylvania”; that she “has no assets, real or personal, no income from any source,” and is unable to support herself; and that, although her father is of sufficient financial ability to do so, he has refused and continues to refuse to .care for and maintain her.
 

 The prayer was that her father be ordered, under the provisions of (Section three of the statute, to pay petitioner (a sum sufficient for her maintenance and support.
 

 The court below fixed January 25, 1941, as the date for a hearing and directed that a copy of the petition
 
 *221
 
 and order be served personally upon appellant by the sheriff of Armstrong County. Instead of filing an answer, appellant, by an appropriate proceeding prior to the hearing, challenged the jurisdiction of the court to make any order of support in behalf of the petitioner, chiefly upon the ground that the provisions of the statute under which the order was .sought could not constitutionally be exercised in favor of any indigent person except one who was “publicly cared for or assisted,” and tfye petition contained no averment that petitioner was so cared for or assisted.
 

 The court proceeded with the hearing, reserving the question of its jurisdiction until the facts should be developed.
 

 These material, and practically uncontroverted, facts appear from the testimony: Prior to her marriage to Mr. Montgomery, more than twenty years ago, petitioner lived with her parents in Kittanning. With her husband she moved first to Pittsburgh, then to> New York and later to Hartford, Bridgeport and Stratford, Connecticut, where her husband died November 5,1940. She was registered and voted at the general election of 1940 in Stratford. In applying in New Haven, Conn., for W. P. A. work after her husband’s death, she gave her residence as No. 246 West Bock Avenue, in that city. On January 11, 1941, she returned to Kittanning and, while living at a hotel as the guest of one of her aunts, registered as a voter and on the third day after her arrival filed the present petition for support. Petitioner’s husband left no estate of any kind, and she has neither assets nor income.
 

 Appellant is eighty-two years of age, but has an income of approximately $350 per month, payable to him by The Armstrong County Trust Company of Kittanning as the successor trustee of the estate of TJrsilla B. Wick, his deceased wife and the mother of petitioner. This income is payable to him during his life and is
 
 *222
 
 “free and clear” of his debts, etc., and of “all liens, attachments and sequestrations.”
 

 At the conclusion of the hearing the court ordered appellant to pay the costs of the proceeding and pay to the clerk of the court, for the use of petitioner, $45 per month in semi-monthly installments. The present appeal is by the father from that order.
 

 As the amount of the order is well within the present financial ability of appellant, we would not be disposed to disturb it, if satisfied the court below had jurisdiction to make it; but we are not so satisfied.
 

 We think the legislature gave plain notice in the title of the act that its provisions were intended to apply only to the support of indigent persons Who had actually become public charges, and that its purpose was to relieve public agencies then burdened with the support of such indigents by compelling, in the manner detailed in the act, .certain relatives to assume their maintenance and by reimbursing the agencies for moneys already expended out of any property or estate such indigents might have. The title of the statute reads: “An Act relating to the support of indigent
 
 persons publicly cared for or assisted;
 
 providing for the support of
 
 .such
 
 persons by certain relatives, land for the recovery of public moneys expended for care and assistance from the property and estates of
 
 stwh
 
 persons; providing for guardians of the person and property of
 
 such
 
 persons; providing for the arrest and seizure and sale of the property of deserters; and providing procedure.” (Italics ours.)
 

 Section one authorizes the statute to be cited as “The Support Law” and section two vests the jurisdiction to hear and determine all issues arising under it in the quarter sessions of the county in which the indigent resides.
 

 The applicable portions of section three read: “Section 3. Relatives Liable for the Support of indigent persons; Procedure to Enforce Support.— (a) The
 
 *223
 
 husband, wife, child,
 
 father,
 
 mother, grandparent and grandchild of every indigent person shall, if of sufficient financial ability, care for and maintain, or financially assist, such indigent person at such rate as the court of the county, where ;sueh indigent person resides, shall order or direct; (b) The court shall have power to hear, determine and make orders and decrees in such cases upon the petition of such indigent person, or of any other person, or any
 
 public body or public agency
 
 having any interest in the care, maintenance or assistance of such indigent person.” (Italics .supplied.)
 

 Paragraph (c) of this section provides for the enforcement of orders by attachment and commitment for contempt.
 

 Section four provides for the recovery from any property of an indigent of the expenses “incurred by any public body or agency.”
 

 Section seven prescribes the procedure which may be invoked against the “deserters” referred to in the title, i. e., husbands who desert their wives or children “leaving them to be publicly cared for or assisted.” The remedies are given, however, only upon “complaint made by [a] public body or public agency.”
 

 The clear statement in the title that the subject matter of the statute is the support of indigent persons publicly cared for or assisted, the reiteration therein of the phrase, “such persons,” and the provisions in the body of the act to which we have referred, all seem to us to disclose a definite legislative intent that the statute shall apply only to a restricted class of indigents, viz., those who are being supported out of public funds.
 

 The learned court below held in its opinion supporting the order that, as the legislature used the phrase “every indigent person” in specifying in section three (above quoted) the “relatives liable for the support” of indigents, the statute was “intended to be a general support act,” and, citing
 
 Com. v. Stofchek,
 
 322 Pa. 513,
 
 *224
 
 518, 185 A. 840, that the title gave sufficient notice of that intent to “interested persons of a reasonably inquiring state of mind.”
 

 We are unable to agree with this suggestion. On the contrary, it seems to us that any relative of an indigent person upon reading the title would be entirely justified in concluding that the act could not be applied to him unless the indigent to whom he was related was being publicly eared for or assisted.
 

 In our opinion, the legislature meant by the use, in section three, of the phrase relied upon below “every indigent person” of the class defined and described in the title. To assume that the members of that body intended the statute to be a general support law, subjecting the designated relatives of every indigent, whether a public charge or not, to liability for his or her support would be equivalent to concluding that they deliberately ignored the constitutional provision (Art. Ill, Section 3) that no bill shall contain “more than one subject which shall be clearly expressed in its title,” by adopting a title which not merely failed to disiclose such intent but was actually misleading.
 

 The purpose of this provision was thus stated by Brown, C. J., in
 
 Fedorowicz v. Brobst,
 
 254 Pa. 338, 341, 98 A. 973: “While we have repeatedly said thaft the title to ,an act of assembly need not be a complete index to its contents, embodying all of the distinct provisions of the bill, we have as often declared that if it does not fairly give notice of the contemplated legislation, so as reasonably to lead to inquiry as to what is contained in the body of the bill, the third section of the third article of the Constitution is violated, and legislation in disregard of it must fall. The purpose of this constitutional provision is to give information to the members of the legislature, or others interested, by the title of the bill, of the contemplated legislation.......”
 

 A case closely analogous to the one at bar is
 
 Mans
 
 
 *225
 

 field’s Case,
 
 22 Pa. Superior Ct. 224. The title of the statute there involved was “An Act to regulate the treatment and control of dependent, neglected and delinquent children, under the age of sixteen years.” In defining, in the first section, the terms “dependent child” and “neglected child” it was attempted to make them include more than such terms ordinarily imply. This court, in an opinion by Porter, J., held the provisions of the act unconstitutional to the extent they exceeded what could reasonably be inferred from the title. In the course of the opinion it was said: “This title contained no intimation that it was the purpose of the act to deal with the treatment and control of
 
 all
 
 children, and the natural and inevitable conclusion of one who read the title was that the descriptive words were intended to limit and define the classes of children with which the legislation dealt. All children may be said to be dependent in the sense that they are the objects of the care of their parents, but the word could not have that signification here, for it was manifestly used as one of limitation. The term ‘dependent and neglected children/ as here used, unmistakably suggests children who are neglected by their natural protectors and dependent upon the public for the supply of the necessaries of life.
 
 The title of an act must suggest its own meaning, and cannot by any definition in the body of the legislation be extended to include what its own words do not imply.”
 
 (Italics supplied.)
 

 There was neither averment nor proof in the present case that petitioner “was publicly cared for or assisted,” and our conclusion is that the court below was without jurisdiction to make the order here involved against her father.
 

 Another ground upon which appellant attacked the jurisdiction of the court below was that the evidence at the hearing demonstrates petitioner was not a bona fide “resident” of Armstrong County when she filed her petition upon the third day after her arrival from Con
 
 *226
 
 necticut, in which state she had lived and voted for a number of years. There is merit in the contention, but we prefer to dispose of this appeal upon the broader ground above stated.
 

 The question of the general constitutionality of “The Support Law” is not involved in this case. Reference is made in each brief to the inquiry whether there is any other statute now in force under which petitioner can compel her father to contribute to her support. We are neither concerned at this time with that question, nor do we express any opinion upon it.
 

 This proceeding was based expressly upon “The Support Law” of 1937 and the order appealed from was entered under its provisions; all we now decide is that the court below was without jurisdiction to enter the same because the statute cannot constitutionally be applied to the uncontroverted facts of this case.
 

 Order reversed and petition dismissed at the costs of appellee.