## Commonwealth v. Hallman

*William Ditter*, for Commonwealth.

*William R. Cooper*, for defendant.

DANNEHOWER, J., December 1, 1954.—A widowed mother, alleging that she is an indigent person and unable to support herself because of her age and her infirmities, filed a petition for support against her six adult children under the Support Law of June 24, 1937, P. L. 2045, sec. 3, as amended by the Act of May 23, 1945, P. L. 864, 62 PS §1973.

The testimony taken at the hearing discloses that because of her advanced age, very poor health, and her doctor's orders, she was unable to work and support herself; that she owned a small row house at 342 E. Penn Street, Norristown, Pa., where she resides, valued at approximately $5,000, with a lien against this property of $2,000 in favor of the Commonwealth of Pennsylvania for mother's assistance, filed in 1940.

Counsel for defendants demurred, which demurrer was overruled and at the close of the hearing, when the hearing judge made a small order on each defendant for the support and maintenance of their mother, a motion in arrest of judgment was filed. Both the exception to the overruling of the demurrer and the motion in arrest of judgment are based upon the sole question whether or not an owner of a $3,000 equity in real property can be an "indigent person" within the meaning of the Act of June 24, 1937, P. L. 2045, as amended, so as to empower the court to order her children to support her.

Since there is no common-law liability upon children for the support of parents, we must rely upon the only statute in existence under which such liability can be imposed. The relevant sections of the act are as follows:

"(a) The husband, wife, child, father and mother of every indigent person, *whether a public charge or not*, shall, if of sufficient financial ability, care for and maintain, or financially assist, *such indigent person* at such rate as the court of the county, where such indigent person resides shall order or direct.

"(b) The courts shall have power to hear, determine and make orders and decrees in such cases upon the petition of such indigent person, or of any other person or any public body or public agency having any interest in the care, maintenance or assistance of such indigent person." (Italics supplied.)

To our knowledge the word "indigent" as used in this statute has never been defined in Pennsylvania. Counsel for both sides have however, directed our attention to certain cases in other jurisdictions. In general, those cases dealt with the degree of poverty necessary to qualify one for such things as public assistance, trial preference, admission to institutions for the insane, court-appointed counsel, and nonpayment of

jury fees, and unfortunately in most instances, the words "indigent", "pauper", and "poor" were used interchangeably. Furthermore, the decisions are in hopeless conflict on the question of whether or not an interest in property disqualifies one from being indigent, poor, or a pauper.

We are therefore faced with the problem of defining the word "indigent" so as to most nearly approach the meaning intended to be given it by the legislature, bearing in mind their intention was to protect the State and the public from having to give relief by putting responsibility on relatives and to see that people do not starve or suffer from lack of necessities.

The new Webster International Dictionary defines the word "indigent" as follows: "to stand in need of; to be needy; to need; wanting; lacking; also void; destitute of property or means of comfortable subsistence."

As defined, it appears that "indigent" can be used to describe one who is merely needy or, alternatively, one who is totally devoid of estate.

In our opinion, "indigent", as used in the statute, means needy; destitute of means of comfortable subsistence, and therefore ownership of an equity in a residence does not necessarily disqualify a mother from receiving support from her children.

There are many elements of necessity in the problem of maintaining oneself, such as: clothing, residence, food, and utilities. Certainly a source of clothing alone would not relieve children from the statutory duty of providing the other necessities. This, in effect, is how defendants are asking us to interpret the statute. On the contrary, the fact that the mother pays nothing except taxes for her residence is merely a consideration in determining the amount required to provide her with necessities of life.

It is therefore our conclusion that one is not necessarily disqualified from being an indigent for the

purpose of support merely because of the ownership of an equity in property. The size of the equity; whether or not it is easily convertible; and the suitability of the property to the needs of claimant, are of course, elements to be considered by the court on the question of whether or not one is really needy or "indigent" within the meaning of the statute.

Since petitioner's husband died in 1931, it can be gathered from the evidence that she received mother's assistance to the extent of $2,000 before 1940 to help raise these six children and that a first lien of $2,000 was filed against this property. It is easily surmised (although it is not in the evidence) that this woman applied for public assistance, that she was advised to seek assistance from her six adult children and then sought the advice of our district attorney.

It cannot be argued with merit that any bank or loan company would make a loan on the equity in this property, because she has no means of paying interest and therefore the equity in this property is not available for her immediate relief. She must be helped by either the public or her children. It would be harsh and cruel to compel her to sell her little home at a sacrifice, pay off the lien and all its accrued interest, pay real estate commissions, and other necessary settlement expenses. Then she would be absolutely destitute, a pauper with no place to live. We cannot conceive this to be the law.

Holding as we do that "indigent" means needy, we are in a position to follow the reasoning of this court in In the Matter of the Support of John A. Bauer and May W. Bauer, 53 Montg. 89 (1936), where in a case closely paralleling the facts in the case at bar, Judge Knight said at page 92:

"The old couple have title to their home at Blue Bell, in this County, which is worth about $6,000.00 and on which there is a mortgage of $2,700.00. They cannot

eat the equity, and it is doubtful if they could sell the place for a fair price. With no capacity to pay interest, they could not increase the present encumbrance. These elderly people have no other assets except the real estate above mentioned. They are 'land poor', and unless helped by their children, would have to be assisted by the public . . .".

It is true that the Bauer case was decided under a statute for the relief of "poor persons", but holding as we do that indigent means merely "needy", the reasoning of that case is applicable to the case at bar.

The court in the Bauer case, supra, said further at page 91:

". . . It is not necessary that the poor person be a pauper, in fact, the very purpose of the law requiring certain relatives to contribute to the support of a poor person, is to prevent such poor person from becoming a pauper to be supported at public expense. Phila. vs. Hays, 56 Pa. Sup. Ct. 352; Comm. vs. Milne, 90 Pa. Sup. Ct. 68."

The legislative history of the act in question buttresses the interpretation we have given to the word indigent.

At one time, the law in Pennsylvania required that to be entitled to support from a child, a parent had to be a public charge: Montgomery v. Wick, 146 Pa. Superior Ct. 219 (1941). This case turns on the language of the Support Law and its title as it then existed, the Act of June 24, 1937, P. L. 2045. The title to this act read in part:

"An act relating to the support of indigent persons publicly cared for or assisted . . .".

Section 3 of this act stated:

"The husband, wife, child, father, mother, grandparent and grandchild of every indigent person shall, if of sufficient financial ability, care for and maintain, or financially assist, such indigent person at such rate

as the court of the county, where such indigent person resides, shall order or direct . . .".

The instant case, however, is founded upon the Support Law of May 23, 1945, P. L. 864, 62 PS §1971, etc., the title to which states:

"An Act relating to the support of indigent persons; providing for the support of such persons by certain relatives . . .".

Section 1 of this act, 62 PS §1973, provides:

"The husband, wife, child, father and mother of every indigent person, whether a public charge or not, shall, if of sufficient financial ability, care for and maintain, or financially assist, such indigent person at such rate . . .".

The change in the law plainly indicates the legislative intent to:

1. Eliminate support responsibility for and by grandparents and grandchildren, and

2. Eliminate the need that a person be a public charge to be eligible for support.

In other words, the scope of the relationship between those who are responsible for and those who are eligible to support has been narrowed by the elimination of grandparents and grandchildren. However, at the same time within that narrower relationship the responsibility has been increased by the elimination of the requirement that one must be a "public charge" to be eligible. Stating it another way, the degree of "poverty" need not be as great under the present law as it was under the former.

It follows that if a person need no longer be a "public charge" to be entitled to support from his children, one who is the owner of a modest amount of property need not divest himself of it, that is, reduce himself to being a "public charge", in order to qualify for such support.

Sound, practical thinking, the guidance of other jurisdictions, and the liberalization of the Support Law point to the conclusion that petitioner is entitled to the amount set forth in the order imposed upon defendants.

## Order

And now, December 1, 1954, for the foregoing reasons, defendants' exception to the overruling of their demurrer, and motion in arrest of judgment are overruled and refused.