## Marnell v. Mount Carmel Joint School System and Joint School Committee, Appellant.

Argued November 18, 1954. Before STERN, C. J., STEARNE, JONES, BELL, CHIDSEY, MUSMANNO and ARNOLD, JJ.

*Russell S. Machmer,* with him *Charles M. Menapace,* for appellant.

*Louis Cohen,* for appellee.

OPINION BY MR. JUSTICE MUSMANNO, January 3, 1955:

The litigation in this case is a particularly unfortunate one because it means that one of two nurses must lose a position which both are equally qualified to fill. The plaintiff, Mrs. Anna Marnell, was employed as a school nurse by the Mount Carmel *Township* School District. Her opponent (although not for-

mally the defendant in this case), Miss Mildred Ambrose, was employed by the Mt. Carmel *Borough* School District. On September 28, 1951, these two school districts established a jointure under the name of Mount Carmel Joint School System, and since, under the combined school system one nurse could perform all the work required in the combined schools, the Joint School System found itself compelled to dismiss either Mrs. Marnell or Miss Ambrose. The School Code, which anticipates such a situation, provides: "(a) Whenever a board of school directors decreases the size of the staff of professional employes, the *suspensions to be made* shall be determined by the county superintendent of schools or the district superintendent, as the case may be, on the basis of *efficiency rank* determined by ratings made in accordance with standards and regulations, determined by rating cards prepared by the Department of Public Instruction, as required by section one thousand one hundred twenty-three of this act. . ." (Sec. 1125, as amended Aug. 10, 1951, P. L. 1157, sec 2, 24 PS 11-1125 Pocket Parts). (Emphasis supplied.)

Since the ensuing investigation resulted in a "satisfactory" rating for both Mrs. Marnell and Miss Ambrose, it was necessary to turn to subsection (b) of Section 1125: "(b) in cases in which suspensions are to be made, *professional employes shall be retained on the basis of seniority rights,* acquired within the school district of current employment, *where no differences in rating are found.* Seniority rights shall also prevail where there is no substantial difference in rating. . ." (Emphasis supplied.)

Under this provision the Joint School Committee found Mrs. Marnell to be junior in seniority and she was suspended as of October 4, 1951. Mrs. Marnell brought an action in mandamus to compel reinstatement, averring that her seniority rights surpassed Miss

Ambrose's. When the case came up for trial, the Judge directed a verdict in favor of Mrs. Marnell. The defendant moved for judgment n.o.v., which was refused, and this appeal followed.

Reviewing the facts which culminated in this regrettable controversy, we find the following: On May 3, 1943, Miss Jeannette Lukens, school nurse in the Borough of Mt. Carmel, applied for and obtained military leave of absence under the provisions of Act 282, approved August 1, 1941. Simultaneously with the granting of military leave to Miss Lukens, the School Board of the Borough appointed Miss Mildred Ambrose to fill the vacancy caused by Miss Lukens' absence. Miss Lukens later resigned and her resignation was accepted on September 7, 1943. The Board of Directors then elected Miss Ambrose school nurse for the district and gave her a contract as a "temporary professional employee" for a period of 12 months at a salary of $1540. Miss Ambrose immediately began her duties under this contract.

In the sister district, the *Township* of Mt. Carmel, another picture was unfolding. On May 5, 1943, the School Directors of the Township appointed Mrs. Marnell as a school nurse for a period of nine months "beginning September, 1943 or the beginning of the school term." Before Mrs. Marnell entered on her duties a Miss Mary Haffey, already employed as a school nurse in the Township, resigned, whereupon the School Directors on August 24, 1943, passed a motion adjusting the salary of Mrs. Marnell so that her regular salary (effective September 11, 1943) would be $1907. On September 1, 1943, the Township School District entered into a written "temporary professional employe" contract with Mrs. Marnell for a period of 12 months. On the same day Mrs. Marnell embarked on her duties as school nurse.

Thus, we have the situation of Miss Ambrose taking up work as a nurse in the Borough beginning May 3, 1943, and Mrs. Marnell beginning her services as a nurse in the Township on September 1, 1943. Which of these two nurses has superiority in tenure? If the calendar alone controlled, obviously Miss Ambrose would be entitled to the permanent position in the Joint School System. However, more than chronology is involved. Tenure and seniority rights do not begin until one has acquired what is called a "temporary professional employe" status. There is no doubt that Mrs. Marnell acquired this status on September 1, 1943. Her contract so reads. Miss Ambrose's status as a temporary professional employe did not begin until September 7, 1943. Her status from May 3, 1943 to September 7, 1943 was that of a substitute and thus, unfortunately for her, she could not qualify for seniority rights. The Act of Aug. 1, 1941, P. L. 744, provides that employes on military leave of absence retain their rights and privileges as if they had continued in the school service and their seniority rights continue to cumulate as if they were still on duty with the School Board. In appreciation of this situation, the School Board did not fill, with a temporary professional employe, the vacancy caused by Miss Lukens' absence on military leave until Miss Lukens had actually resigned her nurse's position. Accordingly, between May 3, 1943, and September 7, 1943, Miss Ambrose was a substitute only. In *Love v. Redstone Township School District,* 375 Pa. 200, 204, we said: "The vacancy which the Legislature intended a temporary professional employe to occupy is a position to which a teacher will not return. If there were no vacancy *in this sense* then this position was to be filled by a substitute." It thus follows that until it was definitely established that Miss Lukens was not returning, the substitute acting in her place

could not acquire the temporary professional status which brings with it tenure and seniority rights.

The defendant Joint School System contends that Mrs. Marnell's contract offends against the rule laid down in *Com. ex rel. Ricapito v. Bethlehem School District,* 148 Pa. Superior Ct. 426, that a contract must be drawn in compliance with the resolution. The disparity between the resolution and the contract, however, is more apparent than real. It is argued by the defendant School System that, according to the resolution of May 5, 1943, the plaintiff's employment was to begin on September 7, 1943, the first day of the school term. But the resolution reads that Mrs. Marnell was appointed for nine months "beginning September, 1943, or the beginning of the school term." *"Or"* obviously is a disjunctive particle and means one or the other of two propositions; never both. The School Board preferred that Mrs. Marnell's incumbency start "beginning September, 1943." When is the beginning of September? It is not September 7th. When the curtain lowers on the last day of August, it next rises on the first of September. In the theatre of time there is no intermission. The days are actors who follow one another on the stage of events in inevitable, inexorable and consecutive order. Mrs. Marnell's contract put her to work on September 1st, if the Board so desired. The Board did so desire. Logic and reason dictated this determination because a school nurse has many duties to perform in *preparing* for the influx of hundreds of school children.

Although the resolution mentioned a nine-month term and the contract called for a two-year term, it is to be noted that a temporary professional employe under the Act of 1939, P. L. 482, is entitled to a temporary professional employe's contract of a two-year probationary type. The contract would necessarily

need to comply with the provisions of the School Code. In the *Ricapito* case we said that: "A contract must be duly signed by the teacher and executed by the president and secretary on behalf of the board, drawn in strict compliance with the action taken by the board *and the provisions prescribed by the School Code and its amendments."*

The defendant complains that the lower court took into consideration, in its Opinion, the minutes of August 24, 1943, which, although appearing in Defendant's New Matter, were not introduced in evidence. It was the defendant who had custody of these minutes and it was the defendant who averred them in the pleadings. Without deciding that the lower court had legal justification for using the minutes in question as one of the props on which to base its decision, we do find that the decision in favor of the plaintiff is amply supported by all the facts and the law applicable to those facts. By necessary implication this Court recognized the validity of Mrs. Marnell's appointment in the case of *Marnell v. Kane,* 368 Pa. 173, decided June 27, 1951.

Although Mrs. Marnell's present employer is the Mount Carmel Joint School System and not the Mt. Carmel Township School District, the Joint School System is obligated to recognize the commitments of its predecessor. The Joint School System can no longer claim that Mrs. Marnell was not legally employed and, in fact, it accepted the employment as a *fait accompli* when on October 4, 1951, it declared that the plaintiff was being *suspended* on account of being junior in seniority. If Mrs. Marnell's employment was a nullity, as the defendant now contends, there would have been no need to suspend her. One does not suspend what never existed.

The defendant's position in this case is not sustainable in any event for if we were to declare Mrs. Marnell's contract to be a nullity, Miss Ambrose's contract would stand on no firmer ground. The resolution of the School Board of Mt. Carmel Borough of September 7, 1943, failed to state when Miss Ambrose's employment was to begin, nor did it state that her employment would be on a two-year probationary basis. The salary was fixed at $1400 plus a 10% temporary increase, plus a State bonus of $250, whereas the contract itself shows a salary of $1540 for a 12-month period.

Judgment affirmed.