## Bensalem Township School District *v.* Bucks County Commissioners, et al.

412

Argued February 8, 1973, before President Judge BOWMAN and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MENCER, ROGERS and BLATT.

*Leonard B. Rosenthal,* with him *Robert Baer Cohen* and *Abrahams and Loewenstein,* for appellant.

*Marvin L. Portney,* for appellee, County Commissioners.

*Frank R. Clokey,* Special Assistant Attorney General, for appellee, Commonwealth.

OPINION BY JUDGE BLATT, April 6, 1973:

This is an action brought by the Bensalem Township School District (School District) seeking to have us declare unconstitutional the Act of January 13, 1966, P. L. (1965) 1292, 16 P.S. §11941 et seq. (hereinafter Act 515), or, in the alternative to have us find that a covenant entered into between Bucks County (County) and Wladyslaw Kowalski (Kowalski), pursuant to this legislation, is invalid.

Act 515 was enacted for the purpose of permitting counties to enter into covenants with landowners in order to preserve their land as farm, forest, water supply or open space land. Act 515 consists of seven sections. At the time in issue,[1] that portion of the Act primarily in question here was Section 3, which read as follows: "All counties of the first, second, second A, third or fourth class are hereby authorized to enter into covenants with owners of land designated as farm, for-

[1] Act 515 was recently amended by the Act of October 26, 1972, No. 254. The only changes made which are important to this case involve Section 3, 16 P.S. §11943 quoted herein, and the duration of the covenant was then extended from five to ten years and the effective date is now to be the date of recording in the office of the recorder of deeds.

est, water supply, or open space land on an adopted municipal, county or regional plan for the purpose of preserving the land in the designated use. Such covenants and extensions thereof shall take effect upon approval of the court of quarter sessions of the county in which such land or the major part thereof lies. The landowner may voluntarily covenant for himself and his successors and assigns in right, title and interest that the land will remain in open space use as designated on the plan for a period of five years commencing with the date of the covenant. The county shall covenant that the real property tax assessment, for a period of five years commencing with the date of the covenant, will reflect the fair market value of the land as restricted by the covenant."

The County Planning Commission adopted a plan as contemplated by Section 2 of the Act[2] and on May 21, 1971, an Act 515 covenant was executed by Kowalski and presented to the County Commissioners concerning 37.31 acres of Kowalski's property. It is mostly tillable, but a small portion is woodland. The proposed covenant was submitted by the County Commissioners to the County Board of Assessment, and that body reported the unrestricted fair market value of Kowalski's property to be $309,600.00, or an assessed value on a countywide 30% ratio of $92,826.00. It further reported that the fair market value of the property, as restricted by the proposed covenant, would be $70,840.00, or an assessed value, applying the 30% ratio, of $21,250.00.

The County thereafter approved the covenant and submitted it to the lower court for court approval, at

---

[2] "No land shall be subject to the provisions of this act unless designated as farm, forest, water supply, or open space land in a plan adopted following a public hearing by the planning commission of the municipality, county or region in which the land is located and unless it is within an area of concentrated population defined by the Federal government as an urban area."

which time the School District filed preliminary objections. Following hearings, the lower court entered an order approving the covenant, except for Paragraph 22 thereof which provided that the property would be assessed at $21,300.00. The Court, held that Act 515 was neither a tax statute nor an assessment statute and does not authorize the County to determine revisions in assessments. It also held that there is no provision for interim assessments such as that purportedly effected by Paragraph 22 of the proposed covenant. The Court's order authorized Kowalski to withdraw from the covenant within 30 days if he so chose, but Kowalski did not so withdraw.

The School District contends that Act 515 violates the uniformity provision of Article VIII, Section 1, of the Pennsylvania Constitution[3] and, because the body of the Act contains more than one subject not clearly expressed in its title, that it also violates Article III, Section 3.[4]

In reviewing such a challenge as is here made, we must keep in mind that a statute is presumed to be valid and constitutional, and the burden is on the challenger to prove that it plainly and clearly violates the Constitution. *Breslow v. Baldwin Township School District,* 408 Pa. 121, 182 A. 2d 501 (1962). "[O]ne seeking to show a statute unconstitutional must carry a very heavy burden." *Philadelphia v. Depuy,* 431 Pa. 276, 279, 244 A. 2d 741, 743 (1968). And, upon careful review, we must find that the School District has failed to carry this burden.

---

[3] "All taxes shall be uniform, upon the same class of subjects, within the territorial limits of the authority levying the tax, and shall be levied and collected under general law."

[4] "No bill shall be passed containing more than one subject, which shall be clearly expressed in its title, except a general appropriation bill or a bill codifying or compiling the law or a part thereof."

The School District contends that Act 515 violates Article VIII,. Section 1 of the Pennsylvania Constitution in lacking uniformity, because it permits certain landowners to enter into covenants with the County which would result in a reduction of the real estate tax assessments on their land. Initially, we must note that Act 515 would not appear to us to be a tax statute, and the uniformity clause, therefore, would not apply because no tax is involved. *Burkley v. Philadelphia,* 339 Pa. 426, 15 A. 2d 201 (1940) ; *Walsh v. Philadelphia School District,* 144 Pa. Superior Ct. 321, 19 A. 2d 598 (1941), *aff'd,* 343 Pa. 178, 22 A. 2d 909 (1941). There is nothing in Act 515 which indicates that its purpose is other than to aid in the preservation of open lands, and, although the Act does provide that land restricted by a covenant shall. be assessed at a value as so restricted, it does not directly impose any tax, nor does it exempt any property from taxation.

Even if Act 515 were a taxing statute, however, we do not believe that it would be violative of the uniformity clause of the Constitution. While it is certainly true that a tax must be applied with uniformity upon similar kinds of business or property and with substantial equality of the tax burden upon all members of the same class,[5] Act 515 is not violative of that test. Act 515 merely provides that a county may covenant that a tax assessment will reflect the fair market value of the land as restricted by the covenant. No exemptions from taxation are awarded. It is merely agreed to recognize the actual value of the land as its use has been restricted. Land must be assessed according to its actual value, and actual value means market value. *Valley Forge Golf Club, Inc. Tax Appeal,* 3 Pa. Commonwealth Ct. 644,

[5] *McKnight Shopping Center, Inc. v. Board of Property Assessment,* 417 Pa. 234, 209 A. 2d 389 (1965) ; *Deitch Company v. Board of Property Assessment,* 417 Pa. 213, 209 A. 2d 397 (1965).

285 A. 2d 213 (1971). And certainly, a covenant binding on the landowner under Act 515 would have some effect on fair market value. As courts in the past have recognized, especially in eminent domain cases,[6] everything which affects the value of the land is a proper element for consideration in determining its value. Zoning regulations have been held a proper consideration in condemnation cases, *Gottus v. Allegheny County Redevelopment Authority*, 425 Pa. 584, 229 A. 2d 869 (1967). In *Boteler v. Philadelphia & Reading Terminal R. R.*, 164 Pa. 397, 30A. 303 (1894), a lease limited the uses to which a certain piece of property could be put, and the Court held that, for eminent domain purposes, the leasehold could not be valued for any purposes other than those permitted in the lease. *Land in Millcreek Township*, 24 Erie L.J. 237 (1942), involved a condemnation of land whose use was limited by a restrictive covenant, and the court there held that the proper measure of damages was the value of the property exclusive of its value as prohibited by the covenant. *Brown Appeal*, 25 Pa. D. & C. 2d 461 (1961), concerned a tax assessment on woodland which was suitable for growing Christmas trees but which had been placed under the United States Soil Bank Program, which effectively prohibited the removal of any trees from the property for ten years. There the court held that, since any trees on the land would not be usable as Christmas trees, the land could not be valued as Christmas tree land.

The above cases, including those pertaining to eminent domain, indicate that, in arriving at market value, it is proper to consider any restrictions placed on the

---

[6] The definition of "market value" in Section 603 of the Eminent Domain Code, Act of June 22, 1964, Special Sess., P. L. 84, 26 P.S. §1-603, is essentially the same as that given for purposes of assessments in Counties of the Third Class (such as Bucks County) by *Valley Forge, supra*.

land. Act 515 does nothing more than to recognize this fact.

The School District has cited some cases to support its allegation that Act 515 violates the uniformity clause. All of these cases, however, are distinguishable from the case at hand. For example, *Madway v. Board for the Assessment and Revision of Taxes*, 427 Pa. 138, 233 A. 2d 273 (1967) involved a section of the First Class Township Code which prohibited the interim assessment of residential construction until the property had been sold or occupied. The court found such a statute to be unconstitutional whether it is viewed as setting up two classes of property, occupied and unoccupied, or merely as exempting property from otherwise valid interim assessments. Act 515, however, does not exempt any property from taxation, either partially or wholly. It merely requires that the assessment on any property covered by a covenant entered into thereunder recognize the restrictions contained in such covenant. *Clearfield Bituminous Coal Corporation v. Thomas*, 336 Pa. 572, 9 A. 2d 727 (1939), concerned a statute which provided that certain lands classed as forest reserves would be exempt from all taxation except for $1.00 per year. While the court properly found that such exemption constituted a violation of the uniformity clause of the Constitution, it is certainly not comparable to the provisions of Act 515.

The School Disctrict has in its brief raised another question concerning uniformity, alleging that the operation of Act 515 is non-uniform throughout the County because its application is limited to urban areas as determined by the Federal government. The County contends, and we must agree, that this issue has never been raised during previous proceedings in this case and is, therefore, not properly before this Court. *Brunswick Corporation v. Key Enterprises, Inc.*, 431 Pa. 15, 244 A. 2d 658 (1968) ; *Amalgamated Transit Union, Divi-*

*sion 85 v. Port Authority of Allegheny County,* 417 Pa. 299, 208 A. 2d 271 (1965) ; *Sojtori v. Zoning Hearing Board and Moyer,* 6 Pa. Commonwealth Ct. 552, 296 A. 2d 532 (1972). We do note, however, that there is in the record a letter from the Regional Administrator of the Federal (HUD) Open Space Program to the County Commissioners which indicates that the School District is in error on this point and that the entire County qualifies as an urban area.

As to the School District's argument that Act 515 is unconstitutional in that it violates Article III, Section 3 of the Pennsylvania Constitution, because the body of the Act contains more than one subject not clearly expressed in its title, we must note that the purpose of Article III, Section 3 is to provide full notice and publicity to all proposed legislative enactments, and thus to prevent the passage of "sneak" legislation. *L. J. W. Realty Corp. v. Philadelphia,* 390 Pa. 197, 134 A. 2d 878 (1957). The title to an act, however, need not be a complete index to its contents, but it must fairly give notice of the contemplated legislation so as reasonably to lead to inquiry as to what is contained in the body of the bill. *Montgomery v. Wick,* 146 Pa. Superior Ct. 219, 22 A. 2d 95 (1941). "The purpose of this constitutional provision is to give information to the members of the legislature, or others interested, by the title of the bill, of the contemplated legislation, and thereby to prevent the passage of unknown and alien subjects which may be coiled up in the folds of the bill. . . ." *Fedorowicz v. Brobst,* 254 Pa. 338, 341, 98 A. 973, 974 (1916). "[A]ll the Constitution requires is that the title should put persons of a reasonably inquiring state of mind on notice of the general subject matter of the act. The incidental provisions of the statute need not be enumerated or indexed in the title if they are germane to the legislation as a whole." *Gumpert's Estate,* 343 Pa. 405, 407, 23 A. 2d 479, 480 (1942). "[T]he title

of an act need not, in order to comply with the constitutional requirement, be an index of its provisions or a synopsis of its contents; so long as it indicates the general subject to which all the provisions of the act are incidental or germane, it is sufficient. . . ." *McSorley v. Fitzgerald,* 359 Pa. 264, 272, 59 A. 2d 142, 146 (1948).

The title to Act 515 reads as follows: "An Act enabling certain counties of the Commonwealth to covenant with land owners for preservation of land in farm, forest, water supply, or open space uses." We are in full agreement with the lower court in its comments on this matter, as follows: "We are satisfied that the title to the act fully and adequately described its contents to both the legislators and the public in general so as to put them on notice of the contents thereof. In providing for the covenant between the county and the property owners for the preservation of lands in the uses set forth in the act, we are satisfied that any reasonable reading of such title would serve notice upon anyone of the purposes of the act and would reasonably advise any taxing body of the possible resultant future diminishment in real estate tax assessment. It should be clear to anyone that a covenant preserving land in farm, forest, water supply or open spaces which, if binding upon the land, would have an effect upon its fair market value and therefore, by definition, upon its assessed valuation for tax purposes. We do not believe that this constitutional provision requires a chronicle in the title of each and every section of the act and of every possible result which may flow therefrom. We believe that the act is an exclusive one for the purpose of preservation of open spaces as defined by the act and is a complete embodiment of the law insofar as this legislative purpose is concerned. The title clearly expresses to anyone specifically interested that its purposes are comprehensive and therefore puts him on notice of all of the ramifications or consequences thereof. See Lima Building

Stone Quarry, Inc. v. Commonwealth of Pennsylvania, Department of Highways, 205 Pa. Superior Ct. 365 (1965). Therefore, we are satisfied that, considering the contents of this act, the title fully and adequately describes it, is not misleading, and therefore not violative of Article III, section 3 of the Pennsylvania Constitution."

The School District also argues before this Court that Act 515 is invalid because it authorizes interim assessments. We note, however, that the School District argued before the lower court that Act 515 did *not* authorize interim assessments and the lower court accepted that argument. The court's ruling on interim assessments was not appealed to this Court by the County, and it could not have been appealed by the School District because it prevailed on that issue and is not a party aggrieved by the ruling made. *Levitt and Sons, Inc. v. Kane, Jr.,* 4 Pa. Commonwealth Ct. 375, 285 A. 2d 917 (1972). It is our opinion, however, that the lower court's ruling on this issue was correct.

Constitutional issues aside, the School District contends in addition that the County has acted improperly in its attempts to implement Act 515. Specifically it claims that, pursuant to Section 2 of the Act, 16 P.S. §11942, this covenant could not have been entered into since neither the Bensalem Township Planning Commission nor the Bansalem Township Board of Supervisors has adopted a plan in accordance with Act 515. We do not agree.

The appropriate language of Section 2 provides that no land shall be subject to the Act unless so designated "in a plan adopted following a public hearing by the planning commission of the municipality, county *or* region in which the land is located. . . ." (Emphasis added.) The word "or" is important. It has been defined as follows: " *'Or'* obviously is a disjunctive article and means one or the other of two propositions; never both."

(Emphasis in original.) *Marnell v. Mount Carmel Joint School System and Joint School Committee*, 380 Pa. 83, 88, 110 A. 2d 357, 360 (1955). It is clear, therefore, that Section 2 does not require that a plan be adopted by both the Township and the County. A plan adopted by either is sufficient, and the County Planning Commission has adopted such a plan. The School District argues, however, that the plan adopted by the County is insufficient because it does not contain adequate standards capable of consistent and uniform administration. Again, we do not agree. The County's plan does contain a statement of purpose, definitions of land subject to Act 515 and land not so subject and illustrative maps indicating generally the lands in the County which may be subject to the provisions of Act 515. It is reasonably consistent and uniform and provides a basis for ascertaining those lands in the County which are subject to Act 515. As such it is sufficient.

We find, therefore, that Act 515 is constitutional, and that it does not violate either Article VIII, Section 1, or Article III, Section 3 of the Pennsylvania Constitution. We also find that it was properly implemented by the plan adopted by the County Planning Commission, and that the plan provides adequate and reasonable standards. As a result, the covenant entered into between the County and Kowalski is valid, except, of course, for Paragraph 22 thereof as noted by the court below.

We affirm the order of the court below.

———————

CONCURRING OPINION BY JUDGE MENCER:

I concur in the opinion of the majority but I do not believe a school district has any standing to challenge the constitutionality of an act of the Legislature. My concept of the powers of a school district is that it has only those expressly conferred upon it by the Legislature or that may be implied from the nature of its duties.

*Wilson v. Philadelphia School District,* 328 Pa. 225, 195 A. 90 (1937); *Slippery Rock Area Joint School System v. Franklin Township School District,* 389 Pa. 435, 133 A. 2d 848 (1957). Surely the Legislature has not conferred on school districts the responsibility of legally testing whether the Legislature acts constitutionally.