## Omohundro v. March

*Heath L. Allen,* for plaintiff.
*David S. Keller,* for defendant, March.

SHUGHART, *P.J.*, April 28, 1981—On February 12, 1980, an automobile owned by Nelson March and operated by his son, Thomas March, was involved in an accident on South York Street in Upper Allen Township with an automobile operated by Miriam Kintz. Allegedly, the March vehicle was involved in a race with two other vehicles operated by defendants Mark Forguson and Daniel Wagner when the collision occurred. Miriam Kintz and Dorothy Omohundro, a passenger in the Kintz vehicle, suffered fatal injuries as the result of the accident. Shelvy Moorhead, a third occupant of the Kintz vehicle was seriously injured. At the time of the accident, the March vehicle was uninsured.

This action was filed on January 12, 1981. In addition to the operators of the racing vehicles, Nelson March was named as a defendant in the action on the theory that he was negligent in failing to maintain statutorily required liability insurance (complaint paragraph 24(b)) and that he was neg-

ligent in entrusting his automobile to his son (complaint paragraph 24(a)). Defendant Nelson March filed preliminary objections to plaintiffs' complaint on February 3, 1981.

The first preliminary objection, a motion for a more specific complaint in regard to paragraph 24(a), has been abandoned. The second objection is a demurrer to paragraph 24(b).

Plaintiffs' theory is that section 301(a)(1) of the Pennsylvania No-fault Motor Vehicle Insurance Act of July 19, 1974, P.L. 489, sec. 301, 40 P.S. § 1009.301, makes the owner of an uninsured vehicle vicariously liable for injuries caused by the operation of his uninsured vehicle. Reduced to its simplest form, plaintiffs contend that section 301(a)(1) makes the owner of an uninsured vehicle the "insurer" of his automobile. Under this theory, plaintiffs seek to hold defendant liable for the negligent acts of his son without reference to fault on his part. Such a cause of action has never been recognized in Pennsylvania. In Warman v. Craig, 321 Pa. 481, 184 Atl. 757 (1936), it was specifically held that a father is not liable for the negligent operation of a vehicle by his son merely because he owned the car and gave his son permission to drive it. See also Spegele v. Blumfield, 120 Pa. Superior Ct. 231, 182 Atl. 149 (1935). The plaintiffs' theory therefore is that section 301(a)(1) of the No-fault Act creates a form of liability heretofore unknown to the law of Pennsylvania. We do not believe that any such result was intended.

A proper analysis of plaintiffs' theory of liability must begin with section 301(a) of the No-fault Act. This section of the act provides: "(a) Partial abolition.—Tort liability is abolished with respect to any injury that takes place in this State in accordance with the provisions of this act if such in-

jury arises out of the maintenance or use of a motor vehicle. . . ." It is clear that the general provision of section 301(a) is the abolition of tort liability for injuries caused in connection with the use or maintenance of a motor vehicle. This broad rule is then tempered by specific exceptions enunciated in subsections (1) through (6). In fact, but for subsections (1) through (6), section 301(a) would abolish all tort liability as far as the maintenance or use of a motor vehicle is concerned. Since the general tenor of section 301(a) is one of abolition of tort liability, and subsections (1) through (6) are exceptions to the rule, it is apparent that none of these subsections create new liability, rather, they allow for the retention of tort liability under certain circumstances. Thus, section 301(a) benefits those who fall within its terms by making them partially immune from tort liability.

Through recognition that section 301(a) is to benefit individuals who abide by the terms of the No-fault Act by providing them with a partial shield from tort liability, the purpose of the exception found in section 301(a)(1) becomes apparent. It provides that "[a]n owner of a motor vehicle involved in an accident remains liable if, at the time of the accident, the vehicle was not a secured vehicle." Through this subsection, the legislature strips the owner of an uninsured vehicle of any immunity from tort liability he may otherwise have been afforded. It is logical that an individual who shuns the act by failing to maintain required insurance should pay for his transgression by having the shield of tort liability removed from him. Once stripped of this shield, the owner of an uninsured vehicle is subject to liability as if the qualified immunity created by the act never existed. But by removal of this shield, the legislature did not place

a sword in the hand of plaintiff to subject the owner of an uninsured vehicle to a new and additional liability. Plaintiffs' theory of liability under section 301(a)(1) must be rejected.

In support of their position, plaintiffs point to section 501 of the No-fault Act. They argue that this section of the act creates vicarious liability on the part of the owner of an uninsured vehicle and, therefore it is consistent to construe section 301(a)(1) as doing the same. This argument is unavailing. In fact, it actually militates against plaintiffs' position. Section 501 provides:

"The obligor obligated to pay basic loss benefits for accidental bodily injury to a person occupying a motor vehicle, the owner of which is uninsured pursuant to this act or to the spouse or relative resident in the household of the owner or registrant of such motor vehicle, shall be entitled to recover all the benefits paid and appropriate loss or adjustments costs incurred from the owner or registrant of such motor vehicle or from his estate. The failure of the person to make payment within thirty days shall be grounds for suspension or revocation of his motor vehicle registration and operator's license."

Is is clear that section 501 does create a limited form of absolute liability on the part of the owner of an uninsured vehicle because it permits one who pays basic loss benefits to an occupant of an uninsured vehicle to recover the payment of such benefits from the owner of the uninsured vehicle. The language in section 501, unlike that in section 301(a)(1), is unequivocal. It demonstrates that the legislature was capable of drafting a provision which created liability by its literal terms when it so intended. If section 301(a)(1) had been intended to create liability, the legislature could have em-

ployed unequivocal language in section 301(a)(1) similar to that used in section 501.

Finally, a holding that section 301(a)(1) creates a new form of liability on the part of the owner of an uninsured vehicle, could place an unconstitutional construction on this section of the No-fault Act. We recognize that the court is not to raise a constitutional question sua sponte, Wiegand v. Wiegand, 461 Pa. 482, 337 A. 2d 256 (1975); however, section 1922(3) of the Statutory Construction Act, 1 Pa.C.S.A. § 1922(3), admonishes us to find that the General Assembly does not intend to violate the Constitution of the United States or the Pennsylvania Constitution in the enactment of a statute. Accordingly, section 301(a)(1) must be construed within the bounds of both the United States and Pennsylvania Constitutions.

Article III, § 3 of the Pa. Const. provides: "No bill shall be passed containing more than one subject, which shall be clearly expressed in its title, except a general appropriation bill or a bill codifying or compelling the law or a part thereof."

As we have stated on occasion in the past:

"The purpose of this section is to provide full notice and publicity to all proposed legislative enactments . . . Bensalem School District v. Bucks County Commissioners, et al., 8 Pa. Commonwealth Ct. 411, 419, 303 A. 2d 258, 263 (1973). The language in the title of an Act must be 'sufficient to inform those to be affected of the contents of the bill.' Harvey v. Ridley Township, 350 Pa. 210, 213, 38 A. 2d 13, 14 (1944)." Heckendorn v. Consolidated Rail Corporation No. 3781 Civil 1979, slip op. at 6, 31 Cumb. L.J. 413, 417 (1980).

The title to the No-fault Act provides as follows:

"[P]roviding for a compensation system for persons injured in motor vehicle accidents; requiring insurance for all motor vehicles required to be reg-

istered in Pennsylvania; defining compensable damages in motor vehicle accident cases; establishing an assigned claims plan; providing for arbitration; imposing powers and duties on courts, the Department of Transportation and the Insurance Commissioner; prohibiting certain discrimination; and providing penalties."

Nothing in the title suggests that the act creates new and additional tort liability upon the owner of an uninsured vehicle. Consequently the construction of section 301(a)(1) urged by plaintiffs would place an unconstitutional construction on this section of the act, and it is therefore impermissible.

The inescapable conclusion is that plaintiffs' theory of liability based on section 301(a)(1) must be rejected and the defendant's demurrer to paragraph 24(b) of plaintiffs' complaint must be sustained.

### ORDER

And now, April 28, 1981, for the reasons appearing in the opinion filed this date, the demurrer of defendant Nelson March to paragraph 24(b) is sustained and paragraph 24(b) is hereby stricken from plaintiffs' complaint. As indicated, his preliminary objection to paragraph 24(a) is abandoned. It is therefore ordered that defendant Nelson March is given 20 days to file an answer to the complaint.