## Daly v. Grove City Area School District

*William J. Maikovich,* for petitioner.
*Timothy L. McNickle,* for respondent.

FRAMPTON, *J.* February 28, 1986 — This case comes before the court on the petition of Jan K. Daly to reverse the decision of the Grove City Area School District furloughing her from her position as a home economics teacher in that district.

The facts in this case are not in dispute. By virtue of various stipulations, it was agreed that the Grove City Area School District has had a substantial decline in student enrollment, as the term is used in the Public School Code, sufficient to justify the furlough of a home economics teacher. Grove City Area School District had two home economics teachers, petitioner, Jan K. Daly, and Sylvia Roach. Ms. Daly was hired on July 13, 1981, as a permanent half-time home economics teacher. Prior to that time, she had been employed for one semester as a long-term substitute, filling the leave of another home economics teacher. From the date of her permanent hiring to her date of furlough, Ms. Daly continued to teach as a half-time home economics teacher. In the school year 1984-85 another home economics teacher went on sabbatical and Ms. Daly was hired by the board as a half-time, long-term substitute to

fill the position made vacant by the regular teacher's sabbatical leave. Therefore, for the 1984-85 school year Ms. Daly was employed both as a permanent half-time teacher and as a half-time, long-term substitute teacher.

Sylvia Roach was hired by the board on August 9, 1982, as a permanent full-time home economics teacher and has continued to work for the Grove City Area School District in that capacity to the present time. Prior to being hired as a permanent full-time employe, Ms. Roach had been employed in the 1981-82 school year as a long-term substitute for one-half year.

The parties stipulated to the employment histories of Ms. Daly and Ms. Roach as follows:

### JAN K. DALY

| YEAR | SUBSTITUTE TIME | PERMANENT TIME | TOTAL |
|------|------|------|------|
| 1980-81 | 682.5 hours | | |
| 1981-82 | | 1,092.5 hours | |
| 1982-83 | | 907.5 hours | |
| 1983-84 | | 907.5 hours | |
| 1984-85 | 682.5 hours | 682.5 hours | |

1,365.0 hours + 3,590.0 hours = 4,955 hours

### SYLVIA ROACH

| YEAR | SUBSTITUTE TIME | PERMANENT TIME | TOTAL |
|------|------|------|------|
| 1981-82 | 682.5 hours | | |
| 1982-83 | | 1,365.0 hours | |
| 1983-84 | | 1,365.0 hours | |
| 1984-85 | | 1,365.0 hours | |

682.5 hours + 4,095.0 hours = 4,777.5 hours

The issue in this case is whether, for the purpose of furlough, seniority should be calculated solely on

the basis of permanent teaching time, or whether the seniority calculation should also include substitute teaching time.

## DISCUSSION

Section 1125.1 of the School Code, 24 Pa.C.S. 11-1125.1 provides:

"(a) Professional employes shall be suspended under section 1124 (relating to causes for suspension) in inverse order of seniority within the school entity of current employment. Approved leaves of absence shall not constitute a break in service for purposes of computing seniority for suspension purposes. Seniority shall continue to accrue during suspension and all approved leaves of absence.

(b) Where there is or has been a consolidation of schools, departments or programs, all professional employes shall retain the seniority rights they had prior to the reorganization or consolidation.

(c) A school entity shall realign its professional staff so as to insure that more senior employes are provided with the opportunity to fill positions for which they are certificated and which are being filled by less senior employes."

Section 1101 of the School Code, 24 Pa.C.S. §11-1101 provides several definitions that are important to the discussion of this case as follows:

"(1) The term "professional employe" shall include those who are certificated as teachers, supervisors, supervising principals, principals, assistant principals, vice-principals, directors of vocational education, dental hygienists, visiting teachers, home and school visitors, school counselors, child nutrition program specialists, school librarians, school secretaries the selection of whom is on the basis of merit as determined by eligibility lists and school nurses.

"(2) The term 'substitute' shall mean any individual who has been employed to perform the duties of a regular professional employe during such period of time as the regular professional employe is absent on sabbatical leave or for other legal cause authorized and approved by the board of school directors or to perform the duties of a temporary professional employe who is absent.

"(3) The term 'temporary professional employe' shall mean any individual who has been employed to perform for a limited time, the duties of a newly created position or of a regular professional employe whose services have been terminated by death, resignation, suspension or removal."

The decision in this case comes down to the treatment of the hours Ms. Daly spent as a substitute teacher for the Grove City Area School District. Of particular interest is Ms. Daly's position during the 1984-85 school year when she served as both a permanent half-time teacher and a half-time, long-term substitute teacher. The half-time, long-term substitute position was to fill the sabbatical leave of another home economics teacher.

The Public School Code does not define "seniority" nor is there a suggested method for calculating seniority. There is, however, some case law that examines the position of a "substitute" and how that position relates to the question of "seniority."

In *Marnell v. Mount Carmel Joint School System,* 380 Pa. 83, 110 A.2d 357 (1955), the Supreme Court dealt with the dismissal of one of two school nurses after the consolidation of two school districts. One of the nurses, Miss Ambrose, was hired May 3, 1943, as a substitute for the regular school nurse who was absent on military leave. On September 7, 1943, the regular school nurse resigned and Miss Ambrose's status changed to that of a

"temporary professional employe." Another nurse, Miss Marnell, was hired as a "temporary professional employe" on September 1, 1943. When the two school districts for which the two nurses were employed became consolidated there was only need for one nurse. The school code provided for retention of the more senior employe.

In its opinion, the court reviewed the difference between a "substitute" and a "temporary professional employe" and indicated that because a teacher who is on leave can elect to return to work and thereby cause the dismissal of the individual temporarily filling that position, the latter person could only be categorized as a substitute and not as a temporary professional employe. The court went on to state that because Miss Ambrose was in a position as a substitute from May 3, 1943, to September 7, 1943 (when the regular nurse resigned) "she could not qualify for seniority rights" during that time. *Marnell*, 380 Pa. at 87.

The position of Ms. Daly in the present case is precisely like the position of Miss Ambrose in the *Marnell* case. Both Ms. Daly and Miss Ambrose had greater continuous service (considering both substitute and professional employe time) than the respective employes who replaced them. In the status of a "substitute," however, they did not obtain the status of professional employes or temporary professional employes and they could not be placed in any other status by the school district because a substitute remains employed only so long as the regular employe chooses to remain absent. Thus, as in Miss Ambrose's situation in the *Marnell* case, Ms. Daly cannot gain seniority during her term as a substitute. The Pennsylvania Commonwealth Court followed *Marnell* in its decision in *Marco v. Montgom-*

*ery Co. Inter. Unit No. 23*, 35 Pa. Commw. 517, 387 A.2d 164, (1978).

Other cases have also looked at the position of "substitute" teachers. In the case of *Love v. Restone Township School District*, 375 Pa. 200, 100 A.2d 55 (1953), the court held that time spent as a substitute does not count toward attainment of permanent professional employe status. In addition, in the case of *Bitler v. Warrior Run School District*, 62 Pa. Commw. 592, 437 A.2d 481 (1980) the court held that the occupation of a position as a substitute even by a professional employe does not carry with it the attributes of tenure and the employe is thus not entitled to a hearing prior to dismissal.

While these last two cases are not directly on point, they reinforce the conclusion that a "substitute" teacher is only employed until the employe on leave returns, and the substitute position cannot include any provision or expectation of permanency and therefore does not include seniority rights.

Therefore, the period served by Ms. Daly as a substitute teacher does not count toward her period of seniority. The fact that she also served in a regular permanent part-time position in the mornings does not affect this determination. Ms. Daly was serving the Grove City School District in two distinct capacities. The school board was under no obligation to hire Ms. Daly to fill the long-term substitute position that she occupied during the 1984-85 school year. Ms. Daly can have no expectation of acquiring any seniority rights as the result of her being a substitute teacher.

Hence this

### ORDER

And now, February 28, 1986, the adjudication issued by the Grove City Area School District furloughing Jan K. Daly is hereby affirmed.