762 P.2d 626

**WILSON ELEMENTARY SCHOOL DISTRICT NO. 7 OF MARICOPA COUNTY, a political subdivision of the State of Arizona, Petitioner,**

v.

**SUPERIOR COURT of the State of Arizona, In and For the COUNTY OF MARICOPA, the Honorable Ruth Harris Hilliard, a judge thereof, Respondent Judge,**

**MARICOPA COUNTY, a political subdivision of the State of Arizona, through Richard L. HARRIS, in his capacity as Maricopa County School Superintendent, Real Party in Interest.**

No. 1 CA–SA 88–083.

Court of Appeals of Arizona, Division 1, Department A.

June 23, 1988.

Gaston & Snow by Charles W. Herf and Cynthia L. Jewett, Phoenix, for petitioner.

Tom Collins, Maricopa County Atty. by Dean M. Wolcott, Deputy Co. Atty., Phoenix, for real party in interest.

OPINION

JACOBSON, Presiding Judge.

The sole issue raised by this special action is whether a school district may call more than one override election affecting a school year budget. Because of the statutory time requirements concerning override elections, an appeal would not provide an adequate remedy to resolve this issue and therefore we accepted jurisdiction of this special action. We previously issued an order denying the school district relief. We now set forth our reasons for that action.

The petitioner, Wilson Elementary School District No. 7 (district) is a political subdivision which operates the Wilson Elementary School in Maricopa County. In December 1987, the governing board of the district, pursuant to the provisions of A.R.S. § 15–481, approved and certified an override election to be held on the second Tuesday in February 1988. The purpose of the election was to seek approval by the electors of the district for an approximate 10% increase in the aggregate budget limitation for the district for the 1988–89 school year.

On February 9, 1988, the election was held, in which only 36 of the district's 850 eligible electors participated. The override was defeated by a vote of 27 against, 9 in favor.

Following the election, and based partially upon the small turnout, the governing board determined to resubmit the proposed increase to the voters at another election, to be held on May 17, 1988. The board then notified the real party in interest, Richard L. Harris, Maricopa County School Superintendent, of its determination to hold another override election and forward the

necessary background materials to the superintendent. *See* A.R.S. § 15–481.

Approximately a month later, the superintendent advised the district, based upon an opinion of the Maricopa County Attorney's office, that the proposed May election was illegal and that the superintendent would refuse to process the necessary materials to hold the May election. The district sought special action relief from the superior court to compel the superintendent to hold another override election. The superior court denied relief and this special action followed.

The district makes two arguments: (1) the function of the county school superintendent in calling an override election at the request of the district is purely ministerial, and involves no discretion, and (2) the statutory scheme involving override elections contemplates more than one election affecting a school budget year. As previously indicated, we disagree on both counts.

The district first argues that under A.R.S. § 15–302(11) the superintendent has no discretion in calling an override election. This statute provides:

> The county school superintendent shall ... [b]e responsible, in cooperation with the governing boards and the board of supervisors, for all special school district elections.

The argument continues that since A.R.S. § 15–481(A) confers upon the governing board the sole threshold determination of whether to request an override election, the superintendent must comply with this request.

In our opinion, this argument misses the point. That is, the district is either legally entitled to call a second election, in which case the superintendent wrongfully refused to allow the election, or legally no such authority exists, in which case the district cannot compel the superintendent to perform an illegal act, even if that act is classified as ministerial.

We therefore turn to this central issue. The district contends that A.R.S. § 15–481(D) expressly authorizes the holding of more than one election each year by using the language "[t]he elections prescribed in subsection A of this section shall be held on *either* the third Tuesday in May *or* the second Tuesday in February." (Emphasis added.) It then points to the specific language of A.R.S. § 15–425(D)[1] dealing with increasing the number of governing board members to argue that when the legislature wants to limit the number of elections, it does so in specific language.

Finally, the district argues that not allowing two elections will result in irreparable harm to the district because of pressing monetary problems. First, we, like the superintendent, sympathize with the district over its monetary problems. We realize that being a school district with largely a hispanic student population, it receives federal funding, but is under the scrutiny of the Federal Office of Civil Rights. Admittedly, the inability to increase the budget may result in decreasing minority programs which could ultimately result in loss of federal funding. However, these problems stem, not from the inability to call a second election, but from the failure to persuade the electorate of the need to increase the budget in the first election. Second, simply because A.R.S. § 15–425(D), dealing with elections called by petition of the electors, expressly prohibits second elections does not help in interpreting A.R.S. § 15–481 dealing with elections called by the board. Finally, the district's argument that the statute's allowance for two dates on which an override election can be held evidences a legislative intent to allow two elections each year is strained at best. The statute uses the language "either/or", which normally denotes the choice of one alternative to another. *Bensalem Township School Dist. v. County Commissioners,* 8 Pa.Commw. 411, 303 A.2d 258 (1973).

**1.** A.R.S. § 15–425(D) provides that in the event the question of whether the number of board members is to be increased is answered in the negative, "the question shall not again be placed upon the ballot of an election in the district until the lapse of one year from the date of such election."

More importantly, the statutory scheme is antithetical to holding more than one override election each budget year. A.R.S. § 15–481(A) provides that if the proposed budget includes an increase over the statutory limits, the board shall call for an override election.

In addition, the governing board shall prepare an alternate budget which does not include an increase in the budget of more than the amount permitted as provided in § 15–905.

Subsection R of A.R.S. § 15–481 then provides, in part:

If the voters in a school district disapprove the proposed budget, the alternate budget which ... does not include an increase ... in excess of the amount provided in § 15–905 *shall* be adopted by the governing board. (Emphasis added).

This scheme clearly envisions a process in which the voters are not only voting on a proposed budget, but are also given the choice between competing budgets for the coming school year. The voters are told that if the proposed budget is defeated, then the alternate budget for that year "shall be adopted." By defeating the proposed budget, the voters are, in essence, voting for the alternate budget. Allowing the district to present the proposed budget again, and thus disapprove the voters' adoption of the alternate budget for that school year, is contrary to the statutory scheme for adopting school year budgets.[2]

We therefore hold that a district, having lost (or won) an override election, is not entitled to have that school year budget submitted to the voters a second time.

Jurisdiction of this special action is accepted; the relief requested by the district is denied.

HAIRE and GREER, JJ., concur.

---

**2.** We realize that subsection M of A.R.S. § 15–481 does contemplate holding additional elections when the previous election affected more than one budget year. The subsection M circumstances are not present in this case.